Pamela B. Petersen
Arizona Bar No. 011512
**Axon Enterprise, Inc.**
17800 N. 85th Street
Scottsdale, AZ 85255-9603
Telephone: (623) 326-6016
Facsimile: (480) 905-2027
ppetersen@axon.com
Secondary: legal@axon.com

Garret G. Rasmussen
Antony P. Kim
Jonathan A. Direnfeld
Thomas Fu
**Orrick, Herrington & Sutcliffe LLP**
1152 Fifteenth Street N.W.
Washington D.C. 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
grasmussen@orrick.com
akim@orrick.com
jdirenfeld@orrick.com
tfu@orrick.com

*Attorneys for Plaintiff Axon Enterprise, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Axon Enterprise, Inc.,

       Plaintiff,

v.

Federal Trade Commission, et al.,

       Defendants.

No. 2:20-cv-00014-PHX-DWL

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

(Oral Argument Requested)

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.      THIS COURT HAS JURISDICTION TO HEAR AXON'S CONSTITUTIONAL
CLAIMS. ............................................................................................................... 3

II.     THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION. .................................... 6

     A.     Axon Is Likely to Prevail on Count I—Its Fifth Amendment Due Process
and Equal Protection Claims. ................................................................. 6

          1.     The FTC's Internal Administrative Process Violates the Due Process
Clause. ......................................................................................... 6

          2.     The FTC's Structure and Procedural Rules Violate the Equal
Protection Clause. ........................................................................ 9

     B.     Axon Is Likely to Prevail on Count II—Its Article II Claim. ................................. 12

     C.     Axon Has Suffered and Will Continue to Suffer Irreparable Harm. ...................... 15

          1.     Deprivation of Constitutional Rights. ......................................... 15

          2.     Impossibility of Monetary Recovery. ......................................... 16

     D.     The Balance of Equities Favor Axon. .................................................... 16

     E.     The Public Interest Favors Issuing a Preliminary Injunction. ............................... 17

RELIEF REQUESTED ...................................................................................................... 17

1

**TABLE OF AUTHORITIES**

2

3

**Cases**

4

*American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) ........................ 19

5

*Amos Treat & Co. v. SEC*, 306 F.2d 260 (D.C. Cir. 1962) ................................................................... 18

6

7

*Baldwin v. Hale*, 1 Wall. 223 (1864) ............................................................................................... 8

8

*Bell v. Hood*, 327 U.S. 678 (1946) ................................................................................................... 3

9

*Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749 (N.D. Cal. 1989) .............................................. 18

10

11

*City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985) ......................................... 11

12

*Cochran v. SEC*, No. 19-10396 (5th Cir. Sept. 24, 2019) ............................................................... 18

13

*Correctional Servs. Corp. v. Malesko,* 534 U.S. 61 (2001) ............................................................. 3

14

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742 (9th Cir. 1991) ...... 7

15

16

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................................... 2, 18

17

*Feinerman v. Bernardi*, 558 F. Supp. 2d 36 (D.D.C. 2008) ........................................................... 19

18

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) ...................... passim

19

*FTC v. Cinderella Career & Finishing Schs.*, 404 F.2d 1308 (D.C. Cir. 1968) .............................. 9

20

*Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466 (9th Cir. 1984) ................................... 2, 18

21

*Grolier Inc. v. FTC*, 615 F.2d 1215 (9th Cir. 1980) ....................................................................... 10

22

23

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ....................................................................................... 8

24

*Hosp. Corp. of America v. FTC*, 807 F.2d 1381 (7th Cir. 1986) .................................................... 14

25

*Howard v. FAA*, 17 F.3d 1213 (9th Cir. 1994) ............................................................................... 4

26

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ................................................... 15, 16

27

*Jones Bros., Inc. v. Sec'y of Labor,* 898 F.3d 669 (6th Cir. 2018) ................................................. 4

28

*Kennecott Copper Corp. v. FTC*, 467 F.2d 67 (10th Cir. 1972) ................................ 9

*McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479 (1991) ................................ 6

*Morrison v. Olson*, 487 U.S. 654 (1988) ...................................................... 16

*Myers v. United States*, 272 U.S. 52 (1926) .............................................. 2, 15

*New Orleans Pub. Serv., Inc. v. New Orleans,* 491 U.S. 350 (1989) ........................... 7

*PPH Corp. v. Consumer Financial Protection Bureau*, 881 F.3d 75 (D.C. Cir. 2018) .......... 17

*Printz v. United States,* 521 U.S. 898 (1997) ............................................ 15

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ...................................... 3

*Sioux City Bridge Co. v. Dakota Cty., Neb.*, 260 U.S. 441 (1923) ......................... 11

*Szonyi v. Barr*, 942 F.3d 874 (9th Cir. 2019) ............................................ 7

*Telecommunication's Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ..... 5, 7

*Time Warner Entertainment Co., L.P. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996) ................. 5

*United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982) ....... 19

*United States v. Baker Hughes, Inc.*, 908 F.2d 981 (D.C. Cir. 1990) .................... 12, 14

*United States v. New York,* 708 F.2d 92 (2d Cir. 1983) ................................... 20

*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997) ....................... 19

*Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) ........................................ 8

*Willowbrook v. Olech*, 528 U.S. 562 (2000) .............................................. 11

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ..................... 7

*Withrow v. Larkin,* 421 U.S. 35 (1975) ................................................ 8, 9

*Zobel v. Williams*, 457 U.S. 55 (1982) ................................................. 11

**Statutes**

15 U.S.C. § 18 ................................................................................................................. 10

15 U.S.C. § 25 ...........................................................................................................10, 11

15 U.S.C. § 41 ................................................................................................................. 13

15 U.S.C. § 45(b) .....................................................................................................10, 11

15 U.S.C. § 45(c) .......................................................................................................4, 11

15 U.S.C. § 45(n) ............................................................................................................ 10

15 U.S.C. §§ 41-42 ........................................................................................................... 2

15 U.S.C. §§ 41-58 ........................................................................................................... 3

28 U.S.C. § 1291 ............................................................................................................. 11

28 U.S.C. § 1331 ............................................................................................................... 3

28 U.S.C. § 2680 ............................................................................................................. 16

5 U.S.C. § 1202(d) .......................................................................................................... 14

5 U.S.C. § 702 ................................................................................................................. 16

5 U.S.C. § 7521(a), (b)(1) .............................................................................................. 14

**Rules**

Fed. R. App. P. 3(a)(1) ................................................................................................... 11

Fed. R. Civ. P. 52(a) ....................................................................................................... 12

**Regulations**

16 C.F.R. § 3.1 ................................................................................................................ 11

16 C.F.R. § 3.54 .............................................................................................................. 11

16 C.F.R. § 3.54(b) ......................................................................................................... 11

16 C.F.R. §§ 3.42, 3.54 ................................................................................................... 10

**Constitutional Provisions**

Art. II, § 1, cl. 1 ............................................................................................................... 2

Art. II, § 3 ....................................................................................................................... 2

U.S. CONST. amend V .................................................................................................... 8

**Other Authorities**

Brief of Solicitor General filed in *Selia Law LLC v. Consumer Financial Protection bureau,* U.S.

   Supreme Court No. 19-7 ........................................................................................ 16, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Axon respectfully moves this Court to issue an order preliminarily enjoining the administrative hearing commenced at the Federal Trade Commission ("FTC") which seeks to subject Axon to an unconstitutional process and forum, in violation of its Due Process and Equal Protection rights and Article II of the U.S. Constitution.

Count I of the Complaint alleges that the FTC Act is facially unconstitutional. The statute violates the Due Process Clause by authorizing an administrative hearing process in which the FTC simultaneously acts as prosecutor, judge, and jury. The FTC's Commissioners vote out a complaint that is prosecuted by FTC lawyers before an Administrative Law Judge ("ALJ") on the FTC's payroll, who renders a decision that is appealable back to the FTC's Commissioners on a *de novo* basis. This has resulted in assured defeat for respondents like Axon. In the words of a former FTC Commissioner, the FTC enjoys a "100 percent success rate," which is a "strong sign" of an "unhealthy and biased institutional process." *See* Ex. 1A at 6.

Moreover, the FTC Act violates the Equal Protection Clause by irrationally depriving a merging party subject to FTC proceedings of the structural and procedural protections it would possess in a challenge brought by the U.S. Department of Justice's Antitrust Division ("DOJ"). As several studies have made clear, the practical effect of that differential treatment is massive: for over two decades, the FTC found liability in 100% of its proceedings, while the DOJ won closer to 50% of its federal court cases. *Id.* That kind of outcome-determinative arbitrariness—where the result hinges on whether the merging party happens to draw the FTC as its federal regulator through a black-box process known as "clearance"—is the antithesis of a rational basis.

Count II alleges further facial infirmities because the FTC Act vests the agency with law-enforcement authority but renders its Commissioners and ALJs unaccountable to the President by prohibiting him from removing them at will—an unconstitutional dual-layer of protection. The Constitution vests all "executive Power" in the President, Art. II, § 1, cl. 1, and charges the President alone with "tak[ing] Care that the Laws be faithfully executed," Art. II, § 3. "[E]ssential to the execution of the laws by" the President is "his power of removing those for whom he cannot continue to be responsible." *Myers v. United States*, 272 U.S. 52, 117 (1926). The FTC Act, however, strips the President of that power and hence violates Article II. 15 U.S.C. §§ 41-42.

Where constitutional rights are at issue, "irreparable harm is presumed," and "'no further showing of irreparable injury is necessary.'" *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (quoting 11A Wright & Miller, Federal Practice & Proc. § 2948.1 (2d ed. 1995)); *accord Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). An injunction here presents no material prejudice to the FTC, which has chosen to spend 18 months investigating an Axon/Vievu merger before rushing to file an administrative complaint after Axon first filed in this Court.[1] Moreover, the vindication of constitutional rights is plainly in the public interest. *Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013).

---

[1] Axon filed its Complaint early Friday morning, January 3, 2020, and emailed courtesy copies to the FTC Chairman and the Director of the FTC's Bureau of Competition. After hours that same evening, FTC Staff notified Axon's outside counsel that it had issued a Part 3 administrative proceeding complaint.

**ARGUMENT**

**I.   THIS   COURT   HAS   JURISDICTION   TO   HEAR   AXON'S CONSTITUTIONAL CLAIMS.**

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Encompassed in that authority is the power to issue injunctions to prevent unconstitutional acts. *See Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). Indeed, equitable relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Correctional Servs. Corp. v. Malesko,* 534 U.S. 61, 74 (2001); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). This Court thus possesses jurisdiction over Axon's constitutional claims, unless the FTC Act contains "discernable intent" to divest it of jurisdiction by requiring such claims to be submitted to the agency first, then appealed to a circuit court. *See Free Enter.*, 561 U.S. at 489. The FTC Act, 15 U.S.C. §§ 41-58, contains no indication that Congress intended any such thing.

Under the three-part test enunciated in *Free Enterprise*, there is no indication that Axon's claims are of a "type [that] Congress intended to be reviewed [solely] within [the FTC's] statutory scheme." 561 U.S. at 489. First, Axon cannot "meaningfully pursue [its] constitutional claims" outside this Court. *Id.* at 490. As an initial matter, the agency has no statutory or regulatory authority to adjudicate or remedy constitutional violations. The FTC Act authorizes the FTC, in relevant part, to investigate and enforce federal antitrust and consumer protection laws. 15 U.S.C. §§ 41-58. Nothing more. "[L]ike all administrative agencies," the FTC has "no authority to entertain a facial constitutional challenge." *See Jones*

*Bros., Inc. v. Sec'y of Labor,* 898 F.3d 669, 673 (6th Cir. 2018); *see also Howard v. FAA*, 17 F.3d 1213, 1218 (9th Cir. 1994) (challenges to constitutionality of agency regulations lie "outside the cognizance" of the administrative agency). That is especially true of the constitutional challenges brought here. Axon's challenges arise, in large part, from the FTC Act itself. And the FTC, as an executive agency, has no power to unilaterally amend the statute. Axon therefore cannot meaningfully pursue its constitutional claims in an FTC administrative proceeding.

Nor is there a judicially reviewable agency order that provides a meaningful opportunity to pursue constitutional claims outside of this Court. The FTC Act provides "only for judicial review of [a cease and desist order]." *Free Enter.*, 561 U.S. at 490; *see* 15 U.S.C. § 45(c).[2] Axon's Complaint makes clear that it objects to the agency's structure and procedures as facially unconstitutional, not a specific action taken by it. *Free Enter.*, 561 U.S. at 490. This claim will not be addressed or reflected in any "cease and desist" order issued by the FTC.[3] Indeed, at the time Axon filed its Complaint, no administrative action that could produce such an order was even pending; a lawsuit before this Court was the *only* means by which Axon could have pursued its constitutional claims. *See Free Enter.*, 561 U.S. at 490-91.

Second, and for this same reason, Axon's constitutional claims are "wholly collateral" to any FTC order or rule from which an appeal might be taken. *Free Enter.*, 561 U.S. at 489.

---

[2] "Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States . . . ." *Id.*

[3] Because Axon is not appealing any FTC or ALJ order, the *Telecommunication's Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*") line of cases do not apply to bar Axon's claims in this Court. *See also Time Warner Entertainment Co., L.P. v. FCC*, 93 F.3d 957, 964 (D.C. Cir. 1996) (holding that a federal district court, not a federal circuit court, had jurisdiction to consider the constitutional challenge of analogous administrative conduct).

As noted above, Axon's Due Process claim addresses the FTC's triple role as prosecutor, judge, and jury, as well as first line appellate panel. The Equal Protection claim addresses the materially different and irrational treatment of similarly situated companies subjected to the FTC's administrative process versus the substantial protections afforded those in DOJ cases adjudicated in federal court. Finally, the Article II claim addresses the unlawful lack of at-will removal power by the President over both the FTC Commissioners and the ALJs. *None* of the foregoing issues relate to the underlying merits of the Axon/Vievu merger.[4] Because Axon objects to the agency's structure and procedures, its "general challenge [is] 'collateral' to any [agency] orders or rules from which review may be sought." *See id.*

Third, the FTC lacks "competence and expertise" in relation to Axon's constitutional claims. *Free Enter.,* 561 U.S. at 478, 491; *see also McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 479 (1991) ("District Court had federal-question jurisdiction to hear respondents' constitutional and statutory challenges to [Immigration & Naturalization Service] procedures."). The constitutional questions raised in the Complaint and that are subject to this motion, do not require "technical considerations of [FTC] policy," and are instead questions of constitutional law, "which the courts are at no disadvantage in answering." *See Free Enter.,* 561 U.S. at 450.

In *Free Enterprise* itself, a case in the same posture as this one at the time of filing, the Supreme Court concluded that district courts retained jurisdiction over a claim that the Public Company Accounting Oversight Board ("PCAOB") was unconstitutional under

---

[4] This motion is not based on Count III, which requests a Declaratory Judgment that Axon's acquisition of Vievu is lawful. Court III is within this Court's jurisdiction for various reasons that are not addressed in this Memorandum—but anticipated to be addressed in subsequent motion practice before the Court.

Article II, because its members were not removable at will. *Id.* at 498. The same conclusion applies to Axon's claims here. Congress has not stripped jurisdiction over Axon's suit, so this Court has a duty to "take such jurisdiction." *New Orleans Pub. Serv., Inc. v. New Orleans,* 491 U.S. 350, 359 (1989). "The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied."[5] *Id.*

## II.    THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION.

A motion for a preliminary injunction is governed by the multi-factor test outlined by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), including (1) likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is not granted, (3) a balance of equities favoring the plaintiff, and (4) that the injunction is in the public interest. Here, each factor supports the grant of a preliminary injunction.

### A.    Axon Is Likely to Prevail on Count I—Its Fifth Amendment Due Process and Equal Protection Claims.

#### 1.    The FTC's Internal Administrative Process Violates the Due Process Clause.

The irreducible minimum of Due Process is "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004); *see* U.S. CONST. amend V. "Parties whose rights are to be affected are

---

[5] Nor are there any "exhaustion" or "finality" concerns. *See, e.g., TRAC, supra.* Indeed, the Ninth Circuit has held that where the agency's position "appears already set" and recourse to administrative remedies is "very likely" futile, exhaustion is not required. *See Szonyi v. Barr*, 942 F.3d 874, 891 (9th Cir. 2019); *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1991). As noted above, the FTC's administrative process has been a guaranteed win for the FTC in every case—the best evidence of "futility." Indeed, over the past several years at least 12 parties simply abandoned their mergers after an administrative complaint was filed, instead of enduring what was sure to be a futile effort on the merits. *See* Ex. 2, Declaration of Antony P. Kim, and its Ex. A chart.

entitled to be heard; and in order that they may enjoy that right … an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id.* (quoting *Baldwin v. Hale*, 1 Wall. 223, 233 (1864)). A "meaningful" hearing "requires a neutral and detached judge." *Id.*

In *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), the Supreme Court held that due process prevented a judge from sitting in a case in which he previously participated as district attorney because "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Id.* at 1905. The same is undoubtably true in the administrative context, despite the Court's ruling decades earlier in *Withrow v. Larkin,* 421 U.S. 35 (1975), that a federal administrative agency does not violate due process by combining investigative and adjudicative functions "without more." *Id.* at 58. But even in *Withrow* the Supreme Court recognized that "special facts and circumstances present in the case" may demonstrate "that the risk of unfairness is intolerably high." *Id.* Thus, where an adjudicator announces its position in advance, as happened here, the risk of bias or prejudgment should be deemed "intolerably high." Moreover, as alleged by Axon, strong evidence of a biased institutional process exists based on the FTC's 100% win rate for more than two decades.[6] (Compl. ¶ 7).

---

[6] A handful of decades-old circuit court cases similarly hold, like *Withrow*, that the combination of investigatory and adjudicatory functions in a single agency, such as the FTC, does not without more constitute a due process violation. *See, e.g., Kennecott Copper Corp. v. FTC*, 467 F.2d 67 (10th Cir. 1972); *FTC v. Cinderella Career & Finishing Schs.*, 404 F.2d 1308 (D.C. Cir. 1968). But, as explained above, Axon's claim here is based on more than just the coincidence of investigative and adjudicative power alone. Moreover, the indicia of unfairness in these older cases involved such things as strongly worded allegations in complaints, press releases, and Commissioners mentioning cases in public interviews. Critically, all of those cases were issued well before the studies showing extreme bias in the

Indeed, a former FTC Commissioner confirmed that once the FTC Commissioners vote out a complaint, they vindicate that position 100% of the time. *See* Ex. 1A, Joshua D. Wright, *Section 5 Revisited: Time for the FTC to Define the Scope of Its Unfair Methods of Competition Authority* at 6 (2015). As observed by Wright:

> The FTC has voted out a number of complaints in administrative adjudication that have been tried by administrative law judges *in the past nearly twenty years*. In each of those cases, after the administrative decision is appealed to the Commission, the Commission has ruled in favor of FTC staff and found liability. **In other words, in 100 percent of cases where the administrative law judge ruled in favor of the FTC staff, the Commission affirmed liability; and in 100 percent of the cases in which the administrative law judge [ ] found no liability, the Commission reversed. This is a strong sign of an unhealthy and biased institutional process.**[7] By way of contrast, when the antitrust decisions of federal district court judges are appealed to the federal courts of appeal, plaintiffs do not come anywhere close to a 100 percent success rate—indeed, the win rate is much closer to 50 percent.

*Id.* (footnote omitted, emphasis added). *See also, e.g.,* Ex. 1B, Andrew N. Vollmer, *Accusers as Adjudicators in Agency Enforcement Proceedings*, 52 U. Mich. J. L. Ref. 103, 145 (2018) (explaining that when "Commissioners have a direct, personal role in critical decisions of initiating enforcement cases by the agency they head" it "create[s] an unconstitutional potential for bias").

As the Ninth Circuit has noted, individuals who have previously weighed in on a case will "ha[ve] developed … a 'will to win,'" *i.e.*, to vindicate the position they have previously taken. *Grolier Inc. v. FTC*, 615 F.2d 1215, 1219 (9th Cir. 1980). For that reason, "Congress

---

results of FTC administrative proceedings, and none considered how agency unfairness may be exacerbated in light of the Equal Protection problems identified here.

[7] The FTC's win streak has continued post-2015 and remains intact today. *See* Ex. 2A.

intended to preclude" such individuals "from decision-making." *Id.* That result is warranted here where the FTC has made clear its "will to win" by demanding an unprecedented "blank check"—well beyond divesting Vievu's assets—to take Axon's independently-created intellectual property either voluntarily through settlement, or forcibly through its internal administrative process. (Compl. ¶¶ 3, 33). This is exactly the kind of prejudging statement that Due Process abhors.

### 2.    The FTC's Structure and Procedural Rules Violate the Equal Protection Clause.

The Equal Protection Clause secures every person against intentional and arbitrary discrimination by the Government and promises equal justice under law. *See Sioux City Bridge Co. v. Dakota Cty., Neb.*, 260 U.S. 441, 446 (1923). If the Government wishes to treat one person different than another, it must have a rational basis for doing so. *See Zobel v. Williams*, 457 U.S. 55, 60 (1982); *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Courts have been vigilant in striking down actions that "intentionally treat [one party] differently from others similarly situated [where] there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, there are generally applicable (unrelated to the underlying facts of this case) outcome-determinative differences between merger challenges by the DOJ under the Clayton Act and by the FTC under the FTC Act. These differences in treatment disadvantage and have a disparate impact on merging parties, like Axon, whose merger is being reviewed by the FTC. These differences clearly affect whether a merger challenge succeeds or fails; they create levels of uncertainty in the marketplace with unequal financial impacts on the merging parties; and they substantively impact material terms in settlement

agreements between parties and their regulators. *See generally* Ex. 1C, Report of the Antitrust Modernization Commission ("AMC"), § II.A.3, at 127-50 (2007).

The specific outcome-determinative differences in treatment include at least the following:

a.  **Differences in the forum for adjudicating the merits**. The DOJ must adjudicate the merits of merger challenges in a U.S. district court. 15 U.S.C. § 25. In contrast, the FTC can choose to adjudicate the merits of the merger challenge at an internal administrative proceeding within the FTC itself or in U.S. district court. *Id.*; 15 U.S.C. § 45(b).

b.  **Differences in the independence of the factfinder**. In adjudicating the merits of a merger challenge and making a trial record, the DOJ must face an independent factfinder—an Article III judge appointed by the President and confirmed by the Senate, and who has no allegiance to the DOJ. 15 U.S.C. § 25. In contrast, the FTC can choose to avoid facing an independent factfinder altogether. The FTC can perform the fact finding itself without any input or oversight. The presiding officer at an administrative proceeding within the FTC is determined by the FTC, and can be an individual Commissioner, all of the Commissioners collectively, or an ALJ whom the FTC can replace at any time and can reverse on a *de novo* review. 16 C.F.R. §§ 3.42, 3.54.

c.  **Differences in the substantive test of a violation**. The substantive test in a DOJ merger challenge is whether the merger "substantially lessens" competition. *See* 15 U.S.C. § 18; *United States v. Baker Hughes, Inc.*, 908 F.2d 981, 982 (D.C. Cir. 1990). In contrast, the FTC can choose to use an unfair competition standard or the substantially lessens competition standard. *See* 15 U.S.C. § 45(n) (defining an "unfair" act or practice as one that

10

"causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition").

d.   **Differences if a U.S. district court rules against the merger challenge**. If a U.S. district court rules against DOJ's challenge of a merger, the DOJ has no legal recourse except to appeal to the circuit court. 28 U.S.C. § 1291; Fed. R. App. P. 3(a)(1); *see also* Ex. 1C at 139. In contrast, if the FTC chooses to challenge a merger in U.S. district court—which the FTC need not do at all—and that U.S. district court rules against the challenge, the FTC subsequently can retry the entire merits proceeding in an administrative proceeding within the FTC itself. 15 U.S.C. § 45(b).

e.   **Differences in applicable procedural and evidentiary rules**. Because merger challenges by the DOJ must occur in U.S. district court, the Federal Rules of Civil Procedure and the Federal Rules of Evidence govern. 15 U.S.C. § 25. In contrast, the FTC uses different rules that it created by regulation (codified in 16 C.F.R. Part 3) and that govern administrative hearings at the FTC. 16 C.F.R. § 3.1.

f.   **Differences in ability to change merits decision prior to circuit court appeal**. The DOJ has no ability to make any changes to the merits decision by the factfinder in U.S. district court before that decision is appealed to the circuit court. In contrast, the FTC can completely change a merits decision, even one that is adverse to the FTC, prior to appeal to the circuit court. 15 U.S.C. § 45(c); 16 C.F.R. § 3.54(b). Even where the presiding officer in an administrative proceeding is an ALJ, the Commission can ignore that ALJ's determinations in their entirety and substitute the Commission's own legal and factual findings prior to appeal. 16 C.F.R. § 3.54.

g.      **Differences in circuit court appellate standards**. A circuit court can reverse a successful merger challenge by the DOJ if it is clearly erroneous. *Baker Hughes, Inc.*, 908 F.2d at 983 (citing Fed. R. Civ. P. 52(a)). In contrast, a circuit court cannot overturn a merger challenge by the FTC if there is substantial evidence supporting it. *Hosp. Corp. of America v. FTC*, 807 F.2d 1381, 1385 (7th Cir. 1986) ("Our only function is to determine whether the [FTC's] analysis of the probable effects of these acquisitions . . . is so implausible, so feebly supported by the record, that it flunks even the deferential test of substantial evidence.").

There is no rational basis for denying companies faced with a merger challenge brought by the FTC of the basic structural and procedural protections they would (and other companies do) enjoy in a merger challenge brought by the DOJ. That is especially so given that the choice of whether a challenge is brought by the DOJ or the FTC is sorted out by the agencies themselves through an informal, non-public, unwritten process called "clearance." "In some cases, the [DOJ] and FTC decide which agency will handle a case by a coin flip. Seriously." *See* Ex. 1D, Sen. Mike Lee, Op.-Ed., *Just One Agency Should Enforce Antitrust Law*, Wash. Examiner (Jun. 17, 2019). Because there is no rational basis that could justify those arbitrary, and often outcome-determinative, differences in the legal standards and processes between merger challenges by the DOJ versus the FTC, Axon is likely to succeed on its claim.

**B.     Axon Is Likely to Prevail on Count II—Its Article II Claim.**

As the Supreme Court has explained, the Framers concentrated Executive power solely in the President to "ensure . . . accountability" in the Executive Branch. *Printz v. United States*, 521 U.S. 898, 922 (1997). While the President may delegate power to others, the President is

the one with whom "the buck stops." *Free Enter.*, 561 U.S. at 493. "[E]ssential to the execution of the laws by" the President is "his power of removing those for whom he cannot continue to be responsible." *Myers*, 272 U.S. at 117.

FTC Commissioners, however, are shielded from at-will Presidential removal—and hence from the key mechanism of democratic accountability. The FTC is headed by five Commissioners, nominated by the President and confirmed by the Senate, each serving a 7-year term. 15 U.S.C. § 41. But once appointed, the Commissioners are not subject to removal by the President absent a finding of "inefficiency, neglect of duty, or malfeasance in office." *Id.* So long as the Commissioners stop short of "malfeasance," the President can do nothing but stand by and watch.

In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court upheld the structure of the FTC, concluding that the lack of at-will removal did not contravene the President's Article II powers, because the FTC served only "quasi-legislative" and "quasi-judicial" functions. *Id.* at 628. But there is a growing consensus that the case was wrongly decided. The Supreme Court itself has acknowledged problems with the reasoning of *Humphrey's Executor*, admitting "it is hard to dispute that the powers of the FTC … would at the present time be considered 'executive,' at least to some degree." *Morrison v. Olson*, 487 U.S. 654, 690 n.28 (1988). And the U.S. Government recently filed a brief in the U.S. Supreme Court in *Selia Law LLC v. Consumer Financial Protection Bureau,* No. 19-7 (Dec. 9, 2019)—a pending challenge to the constitutionality of the CFPB on grounds that its director cannot be removed at will by the President—making much the same point, and arguing for that and other reasons *Humphrey's Executor* "should be narrowed or overruled" to the extent it stands in the way of declaring the CFPB unconstitutional. *See* Ex. 1E, U.S. *Selia* Br. 31, 44.

But regardless of whether *Humphrey's Executor* survives the Supreme Court's pending decision in *Selia Law* (set for argument in March),[8] the FTC's removal structure suffers from a more blatant Article II defect under *Free Enterprise*. In that case, the Supreme Court held that the 5-member PCAOB was unconstitutional because its members were removable only for cause by the SEC, whose Commissioners were in turn removable only for cause by the President. 561 U.S. at 492. In striking down the PCAOB, the Supreme Court reaffirmed, "as a general matter," that the Constitution requires that the President have "the authority to remove those who assist him in carrying out his duties," *Id.* at 513-14. Otherwise, the President could "neither ensure that the laws are faithfully executed, nor be held responsible for a Board member's breach of faith." *Id.* at 496. The two layers of for-cause removal between the President and the PCAOB impermissibly interfered with that power. *Id.* at 495.

The same problem exists here: Not only are the FTC's Commissioners shielded from at-will removal, but so, too, are the ALJs whom those Commissioners appoint, 5 U.S.C. § 7521(a), (b)(1) (permitting an ALJ to be removed only "for cause"), as are the members of the Merit System Protection Board, which is responsible for removing the ALJs, 5 U.S.C. § 1202(d) (permitting Board members to be removed "only for inefficiency, neglect of duty, or malfeasance in office"). Just like the members of the PCAOB, the FTC's ALJs enjoy an

---

[8] There are good reasons to think it will not survive. The only relevant difference between the FTC and the CFPB is that the former is headed by a multimember body, while the latter is headed by a single person. But any "constitutional distinction" based on the number of agency heads is "untenable" with "no footing in precedent, historical practice, constitutional principle or the logic of presidential removal power." *PPH Corp. v. Consumer Financial Protection Bureau*, 881 F.3d 75, 79-80 (D.C. Cir. 2018). That is especially true of the FTC, which in 2017-18, had only two Commissioners appointed, and in at least one situation, took action with the vote of only one Commissioner due to a recusal by the other. *See* Ex. 1F, Commission Order in the Matter of CoreLogic Inc. (Mar. 1, 2018) (issued with 1-0 vote). Accordingly, if the Supreme Court strikes down the CFPB's removal structure in *Selia Law*, there are strong arguments that the FTC's should fall as well.

impermissible "dual-layer of protection" from the President.[9] *See Free Enter.*, 561 U.S. at 495. The FTC's removal structure is thus unconstitutional under Article II for the same reason.

## C.     Axon Has Suffered and Will Continue to Suffer Irreparable Harm.

### 1.     Deprivation of Constitutional Rights.

Where constitutional rights are at issue, "irreparable harm is presumed," and "'no further showing of irreparable injury is necessary.'" *Ezell*, 651 F.3d at 699; *see also Goldie's Bookstore, Inc.*, 739 F.2d at 472 ("[a]n alleged constitutional infringement will often alone constitute irreparable harm"); *Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753-54 (N.D. Cal. 1989) (same). In *Amos Treat & Co. v. SEC*, 306 F.2d 260, 267 (D.C. Cir. 1962), the D.C. Circuit found jurisdiction "solely on due process grounds" and directed the district court to issue a preliminary injunction restraining further SEC proceedings until such time as a full evidentiary hearing was conducted on the question of commissioner disqualification. Similarly here, irreparable injury supporting preliminary injunctive relief is satisfied by Axon's Due Process, Equal Protection, and Article II claims. Axon should not be forced to submit to a hearing process with a preordained result in violation of its constitutional rights. *See, e.g.,* V*alley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1055-56 (5th Cir. 1997) (finding irreparable harm where plaintiff had to submit to a hearing that violated her due process rights); *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1066 (9th Cir. 1995) (finding irreparable harm where hearing violated plaintiff's First Amendment rights); *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) (same).

---

[9] The Fifth Circuit recently enjoined, pending appeal, an SEC administrative proceeding against a respondent based on exactly this kind of constitutional defect with its ALJs. *See Cochran v. SEC*, No. 19-10396 (5th Cir. Sept. 24, 2019). This Court should do the same.

### 2.    Impossibility of Monetary Recovery.

Axon has suffered irreparable injury for a second reason—the monetary damages it is suffering cannot be recovered from the FTC. "[W]here, as here, the plaintiff in question cannot recover damages from the defendant due to the defendant's sovereign immunity . . . *any loss of income* suffered by a plaintiff is irreparable *per se*." *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (granting preliminary injunction against HUD Secretary from effectuating debarment determination even though plaintiff "hardly present[ed] an overwhelming case for a finding of irreparable injury") (emphasis added); s*ee also United States v. New York,* 708 F.2d 92, 93-94 (2d Cir. 1983) (finding irreparable injury where plaintiff unable to recover damages due to defendant's invocation of Eleventh Amendment protections).

Axon's monetary damages are substantial. Axon has already spent more than $1.6 million in legal and expert fees and costs in complying with the Commission's investigatory demands, including responding to Complaint Counsel's voluminous document requests and interrogatories, and producing its executives for testimony. *See* Ex. 1, Declaration of Pamela B. Petersen, ¶¶ 4-5. These injuries are irreparable *per se* because the Commission is immune in this case from suits for money damages. [10]

### D.    The Balance of Equities Favor Axon.

While Axon is threatened with irreparable injury in the absence of a preliminary injunction (*see supra* § II.C), there is no colorable argument that the Commission would be

---

[10] Neither the Administrative Procedure Act ("APA") nor the Federal Tort Claims Act ("FTCA") provides any legal avenue for recovering money damages against the Commission. *See* 5 U.S.C. § 702 (APA actions seeking "relief other than money damages" shall not be dismissed on ground it is against the United States); 28 U.S.C. § 2680 (FTCA sovereign immunity waiver does not apply to claims based upon "a discretionary function or duty").

injured by a preliminary injunction that delays the administrative proceedings pending resolution of Axon's constitutional claims. Any claim of urgency now would be belied by the fact that the FTC did not ask Axon to hold the Vievu assets separate at any point during the more than 18 months that the FTC spent investigating the acquisition. *See* Ex. 1, ¶ 4. Moreover, the grant of a preliminary injunction will not delay the FTC's opportunity to challenge the merger. Indeed, the FTC can challenge it now in this Court. The purpose of this motion is merely to prevent the FTC from forcing Axon into a futile administrative proceeding with a predetermined outcome.

###    E.    The Public Interest Favors Issuing a Preliminary Injunction.

There is a strong public interest in relation to Axon—and any other individual or entity in the United States—that the federal laws and regulations "to which they are subject will be enforced only by a constitutional agency." *Free Enter.,* 561 U.S. at 513.

### RELIEF REQUESTED

For the foregoing reasons, Axon respectfully requests this Court to preliminarily enjoin the FTC's administrative hearing pending resolution of its constitutional claims.

Dated: January 9, 2020                    Respectfully submitted,


                                          */s/ Pam Petersen*
                                          Pamela B. Petersen
                                          Arizona Bar No. 011512
                                          **Axon Enterprise, Inc.**
                                          17800 N. 85th Street
                                          Scottsdale, AZ 85255-9603
                                          Telephone: (623) 326-6016
                                          Facsimile: (480) 905-2027
                                          ppetersen@axon.com
                                          Secondary: legal@axon.com

Garret G. Rasmussen (*pro hac vice* pending)
Antony P. Kim (*pro hac vice* pending)
Jonathan A. Direnfeld (*pro hac vice* pending)
Thomas Fu (*pro hac vice*)
**Orrick, Herrington & Sutcliffe LLP**
1152 Fifteenth Street N.W.
Washington D.C. 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
grasmussen@orrick.com
akim@orrick.com
jdirenfeld@orrick.com
tfu@orrick.com

*Attorneys for Plaintiff Axon Enterprise, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2020, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's CM/ECF system upon all counsel of record in the above-captioned case.  Courtesy copies will also be emailed to the FTC.

*/s/ Pam Petersen*

18