Joseph H. Hunt
Assistant Attorney General
Christopher R. Hall
Assistant Branch Director
Chetan A. Patil
Rebecca Cutri-Kohart
Bradley Craigmyle (IL 6326760)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883
Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-8101
Fax: (202) 616-8460
Email: Bradley.T.Craigmyle@usdoj.gov
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Axon Enterprise, Inc., | **CV-20-0014-PHX-DWL** |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| Federal Trade Commission, *et al.*, | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| Defendants. | |

# TABLE OF CONTENTS

Introduction ....................................................................................................................... 1

Background ......................................................................................................................... 2

    I.        Statutory and Regulatory Background ................................................... 2

    II.      Procedural History ....................................................................................... 3

Legal Standard .................................................................................................................. 3

Argument ............................................................................................................................ 4

    I.        Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits. ....... 4

        A.      This Court Lacks Jurisdiction Because Plaintiff Has Not Followed the Exclusive Review Scheme Set Out in the FTC Act. ............................. 4

            1.    The FTC Act Creates a Comprehensive and Exclusive Review Scheme .......................................................................... 5

            2.    Plaintiff's Claims Fall Within the FTC Act's Review Scheme. ............................ 6

        B.      The Court Lacks Jurisdiction Because Plaintiff Does Not Challenge Final Agency Action. ........................................................... 12

    II.      Plaintiff Cannot Show That It Will Suffer Irreparable Harm If the Administrative Proceeding Continues ...................................................... 14

    III.    The Balance of Harms and the Public Interest Weigh Against an Injunction. ........................................................................................... 16

Conclusion ....................................................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Alliance for Wild Rockies v. Cottrell*,

4

   632 F.3d 1127 (9th Cir. 2011) ........................................................................ 3, 4

5

*American-Arab Anti-Discrimination Committee v. Reno*,

6

   70 F.3d 1045 (9th Cir. 1995) ........................................................................... 15

7

*Amos Treat & Co. v. SEC*,

8

   306 F.2d 260 (D.C. Cir. 1962) ......................................................................... 15

9

*Arch Coal, Inc. v. Acosta*,

10

   888 F.3d 493 (D.C. Cir. 2018) ..............................................................1, 4, 5, 6

11

*Bank of La. v. FDIC*,

12

   919 F.3d 916 (5th Cir. 2019) ................................................................. 1, 5, 6, 11

13

*Bebo v. SEC*,

14

   799 F.3d 765 (7th Cir. 2015) ...................................................................*passim*

15

*Bennett v. SEC*,

16

   844 F.3d 174 (4th Cir. 2016) ...................................................................*passim*

17

*Berkley v. FERC*,

18

   139 S. Ct. 941 (2019) ........................................................................................ 7

19

*Berkley v. Mountain Valley Pipeline, LLC*,

20

   896 F.3d 624 (4th Cir. 2018) ...................................................................*passim*

21

*Berkley v. Mountain Valley Pipeline, LLC*,

22

   No. 7:17-CV-00357, 2017 WL 6327829 (W.D. Va. Dec. 11, 2017) ...................... 11

23

*City of San Diego v. Whitman*,

24

   242 F.3d 1097 (9th Cir. 1998) ......................................................................... 13

25

*Cochran v. SEC*,

26

   No. 4:19-CV-066-A, 2019 WL 1359252 (N.D. Tex. Mar. 25, 2019).................... 12

27

*Elgin v. U.S. Dep't of Treasury*,

28

567 U.S. 1 (2012) ........................................................................................ *passim*

*Ezell v. City of Chicago,*

651 F.3d 684 (7th Cir. 2011) ...................................................................... 15

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*

561 U.S. 477 (2010) ............................................................................7, 11, 12

*FTC v. Standard Oil Co. of Cal.,*

449 U.S. 232 (1980) ................................................................................... *passim*

*Gallo Cattle Co. v. USDA,*

159 F.3d 1194 (9th Cir. 1998) ..................................................................... 13

*Hill v. SEC,*

825 F.3d 1236 (11th Cir. 2016) ............................................................... *passim*

*Home Loan Bank Bd. v. Mallonee,*

196 F.2d 336 (9th Cir. 1952) ....................................................................... 15

*Howard v. FAA,*

17 F.3d 1213 (9th Cir. 1994) ......................................................................... 7

*Humphrey's Executor v. United States,*

295 U.S. 602 (1935) ..................................................................................... 14

*INS v. Legalization Assistance Project,*

510 U.S. 1301 (1993) ................................................................................... 17

*Jarkesy v. SEC,*

803 F.3d 9 (D.C. Cir. 2015) ...................................................................... *passim*

*Jones Brothers, Inc. v. Secretary of Labor,*

898 F.3d 669 (6th Cir. 2018) ......................................................................... 7

*LabMD, Inc. v. FTC,*

776 F.3d 1275 (11th Cir. 2015) ...............................................................9, 13

*LabMD, Inc. v. FTC,*

894 F.3d 1221 (11th Cir. 2018) ..................................................................... 8

*Lucia v. SEC,*

138 S. Ct. 2044 (2018) ................................................................................................ 14

*Maryland v. King,*

133 S. Ct. 1 (2012) ...................................................................................................... 16

*McNary v. Haitian Refugee Center, Inc.,*

498 U.S. 479 (1991) .................................................................................................... 11

*Morris & Dickson Co. v. Whitaker,*

360 F. Supp. 3d 434 (W.D. La. 2018) ........................................................... 5, 11, 12

*Morris & Dickson Co., L.L.C. v. Barr,*

No. 19-30043, 2019 WL 3230978 (5th Cir. Apr. 1, 2019) ................................. 5, 11

*Nationwide Mut. Ins. Co. v. Liberatore,*

408 F.3d 1158 (9th Cir. 2005) .................................................................................... 14

*Nken v. Holder,*

556 U.S. 418 (2009) .................................................................................................... 16

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.,*

465 F.3d 977 (9th Cir. 2006) ................................................................................. 1, 13

*Pub. Util. Comm'r of Or. v. Bonneville Power Admin.,*

767 F.2d 622 (9th Cir. 1985) ...................................................................................... 16

*Raymond J. Lucia Cos. v. SEC,*

No. 18-CV-2692 DMS (JLB), 2019 WL 3997332 (S.D. Cal. Aug. 21, 2019) ...................... 12

*Stormans, Inc. v. Selecky,*

586 F.3d 1109 (9th Cir. 2009) ...................................................................................... 3

*Thunder Basin Coal Co. v. Reich,*

510 U.S. 200 (1994) ............................................................................................. 1, 4, 5

*Tilton v. SEC,*

824 F.3d 276 (2d Cir. 2016) .............................................................................. *passim*

*Time Warner Entertainment Co., L.P. v. FCC,*

93 F.3d 957 (D.C. Cir. 1996) ...................................................................................... 11

*Ukiah Valley Med. Ctr. v. FTC,*

911 F.2d 261 (9th Cir. 1990) ............................................................................ 13

*United Church of the Medical Center v. Medical Center Commission,*

    689 F.2d 693 (7th Cir. 1982) ...................................................................... 15

*United States v. Mitchell,*

    463 U.S. 206 (1983) ...................................................................................... 14

*Winter v. Nat. Res. Def. Council, Inc.,*

    555 U.S. 7 (2008) ............................................................................................ 3

*Withrow v. Larkin,*

    421 U.S. 358 (1975 ...................................................................................... 14

**Statutes**

5 U.S.C. § 557(b) ........................................................................................... 2, 5

5 U.S.C. § 702 ................................................................................................... 13

5 U.S.C. § 704 ................................................................................................... 13

12 U.S.C. § 1818 .................................................................................................. 5

15 U.S.C. § 41 ...................................................................................................... 2

15 U.S.C. § 45(a) ........................................................................................... 6, 10

15 U.S.C. § 45(a)(2) ......................................................................................... 16

15 U.S.C. § 45(b) ................................................................................................ 5

15 U.S.C. § 45(c) ............................................................................................ 2, 7

15 U.S.C. § 45(d) ............................................................................................ 5, 6

15 U.S.C. § 45(*l*) ................................................................................................ 6

15 U.S.C. § 53(b) ................................................................................................ 6

15 U.S.C. § 78u-2 ............................................................................................... 6

15 U.S.C. § 78u-3(a) .......................................................................................... 5

15 U.S.C. § 78u(d) .............................................................................................. 6

15 U.S.C. § 78u(d)(1) ......................................................................................... 5

15 U.S.C. § 78y(a)(3) .......................................................................................... 5

21 U.S.C. § 824 ........................................................................................................... 5

21 U.S.C. § 877 ........................................................................................................... 5

28 U.S.C. § 1331 ....................................................................................................... 13

28 U.S.C. § 2201 ....................................................................................................... 14

30 U.S.C. § 814 ........................................................................................................... 5

30 U.S.C. § 816(a)(1) .................................................................................................. 5

30 U.S.C. § 818 ........................................................................................................... 6

30 U.S.C. § 826 ........................................................................................................... 5

30 U.S.C. § 934(b)(4)(A) ............................................................................................ 6

33 U.S.C. § 921 ........................................................................................................... 5

33 U.S.C. § 921(c) ...................................................................................................... 5

33 U.S.C. § 921(d) ...................................................................................................... 6

33 U.S.C. § 932 ........................................................................................................... 5

**Regulations**

16 C.F.R. § 3.21 .......................................................................................................... 2

16 C.F.R. § 3.22 .......................................................................................................... 2

16 C.F.R. § 3.31 .......................................................................................................... 2

16 C.F.R. § 3.41 .......................................................................................................... 2

16 C.F.R. § 3.51 .......................................................................................................... 2

16 C.F.R. § 3.52 .......................................................................................................... 2

16 C.F.R. § 3.53 .......................................................................................................... 2

16 C.F.R. § 3.54 .......................................................................................................... 2

**Other Authorities**

*LabMD, Inc.*, Trade Reg. Rep. P 79708 (F.T.C. 2016) ............................................. 8

*Otto Bock Healthcare N. Am., Inc.*, Trade Reg. Rep. P 80990 (F.T.C. 2019) ................................... 8

## <u>I</u>ntroduction

This Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff has bypassed the exclusive review scheme set out by Congress. No matter what type of claim Plaintiff brings—constitutional or not—it cannot bypass the exclusive review scheme and bring them to this Court. The Supreme Court squarely holds that a comprehensive, exclusive review scheme precludes district court jurisdiction. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994). The Federal Trade Commission Act of 1914 creates just this type of a review scheme, and it channels all judicial review of FTC administrative proceedings to the courts of appeals. Nowhere in that scheme did Congress provide for district court review.

Plaintiff tries to explain away this Supreme Court precedent, but the courts of appeals have rejected arguments nearly identical to those Plaintiff makes here. Under other exclusive review schemes that mirror this one, six courts of appeals have, in recent years, addressed and rejected virtually identical attempts to short-circuit ALJ administrative proceedings by raising constitutional challenges to agency proceedings in district court. *See Bennett v. SEC*, 844 F.3d 174, 177–78 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236, 1240 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276, 279–80 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765, 768 (7th Cir. 2015); *Jarkesy v. SEC*, 803 F.3d 9, 16–17 (D.C. Cir. 2015) (collectively, the "*SEC ALJ Cases*"); *see also Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 499–500 (D.C. Cir. 2018); *Bank of La. v. FDIC*, 919 F.3d 916, 924–25 (5th Cir.), *cert. denied*, 140 S. Ct. 227 (2019). These cases are directly applicable here.

And even if Plaintiff could explain away those decisions, this Court still does not have jurisdiction because Plaintiff brings an Administrative Procedure Act claim even though the agency has not yet issued a final order. The Supreme Court and the Ninth Circuit reject challenges to agency proceedings raised before those proceedings are finished. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980); *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).

Plaintiff cannot show that this Court has jurisdiction over its claims. Thus, Plaintiff is not entitled to a preliminary injunction, and its motion should be denied.

1

## Background

2

### I.    Statutory and Regulatory Background

3       As part of its obligation to protect the public from unfair methods of competition,

4    the FTC investigates possible violations of the federal antitrust laws and enforces those laws

5    in civil actions and administrative proceedings. The Federal Trade Commission Act of 1914,

6    15 U.S.C. § 41 *et seq.*, and its implementing regulations establish a comprehensive scheme for

7    commencing and reviewing FTC enforcement actions. Congress has authorized the

8    Commission to bring actions against those it suspects of violating the FTC Act and has

9    given it the discretion to do so by filing enforcement actions in federal district court or in

10   administrative proceedings before the agency. *See, e.g.*, 15 U.S.C. §§ 45(a), 45(b), 53(b).

11      When the Commission files an administrative complaint, a comprehensive process

12   springs into action. Administrative complaints are typically tried before an ALJ, and the ALJ

13   conducts prehearing proceedings—including holding conferences, receiving legal briefs and

14   motions, and overseeing discovery, *see* 16 C.F.R. §§ 3.21–3.22, 3.31—and holds an

15   evidentiary hearing, *id.* § 3.41. After the hearing, the ALJ makes an initial decision, *id.* § 3.51,

16   which the respondent may appeal to the Commission, *id.* § 3.52, or which the Commission

17   may review on its own initiative, *id.* § 3.53. If no notice of appeal is filed and the

18   Commission does not review on its own initiative, the ALJ's decision becomes the decision

19   of the Commission thirty days after the respondent is served with it. *Id.* § 3.51(a). If the

20   Commission reviews an initial decision, it does so de novo, *see id.* §§ 3.52–3.54; 5 U.S.C. §

21   557(b), and it may "adopt, modify, or set aside the" initial decision, 16 C.F.R. § 3.54(b). No

22   initial decision imposes any obligations until that order becomes the Commission's decision.

23   *See id.* § 3.51(b).

24      Congress further provided that any person "required by an order of the Commission

25   to cease and desist from using any method of competition or act or practice" can seek

26   judicial review of the order in a federal court of appeals. 15 U.S.C. § 45(c). After the record is

27   filed in the court of appeals, the court has "exclusive" jurisdiction to affirm, enforce, modify,

28   or set aside the final order. *Id.* § 45(d).

1   **II.     Procedural History**

2          Plaintiff manufactures body-worn cameras and digital evidence management systems.

3   Compl. for Declaratory and Inj. Relief ¶ 3, ECF No. 1. On May 3, 2018, Plaintiff acquired

4   one of its competitors, VieVu, LLC. *See id.* ¶¶ 22–24. A little more than a month later, the

5   Commission began investigating Plaintiff's acquisition. *Id.* ¶ 25. Before the Commission took

6   any formal action, on January 3, 2020, Plaintiff filed this lawsuit. *See generally id.* The same

7   day, the Commission initiated administrative proceedings against Plaintiff, alleging that

8   Plaintiff had acquired its closest competitor in the market for body-worn cameras and digital

9   evidence management systems sold to large, metropolitan police departments. Complaint ¶

10  2, *Axon Enter.*, No. D9389 (F.T.C. Jan. 3, 2020) ("FTC Compl."). The Commission alleged

11  that the acquisition "eliminated direct and substantial competition between" Plaintiff and

12  VieVu, "further entrenching [Plaintiff's] position as the dominant supplier." *Id.* Six days later,

13  Plaintiff filed this motion, *see generally* Pl.'s Mot. for Prelim. Inj. and Supporting Mem. of P. &

14  A., ECF No. 15 ("Pl.'s Mot."), and the next day, it asked the Commission to stay the

15  administrative proceedings while this case is pending. Motion of Respondent Axon

16  Enterprise, Inc., to Stay the Administrative Proceeding, *Axon Enter.*, No. D9389 (F.T.C. Jan.

17  10, 2020). A hearing before ALJ D. Michael Chappell is scheduled for May 19, 2020. FTC

18  Compl. at 11.

19                                    **<u>Legal Standard</u>**

20          "A preliminary injunction is an extraordinary remedy never awarded as of right."

21  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To get this extraordinary relief,

22  Plaintiff must show (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to

23  suffer irreparable harm [without] preliminary relief," (3) "that the balance of equities tips in

24  [its] favor," and (4) "that an injunction is in the public interest." *Id.* at 20;[1] *Stormans, Inc. v.*

25  *Selecky*, 586 F.3d 1109, 1126–27 (9th Cir. 2009).

26  _____

27          [1] "[T]he 'serious questions' version of the sliding scale test for preliminary injunctions
    remains viable after . . . *Winter*." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th
28  Cir. 2011). "[T]he test has been formulated as follows: 'A preliminary injunction is

## Argument

**I.   Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits.**

**A.   This Court Lacks Jurisdiction Because Plaintiff Has Not Followed the Exclusive Review Scheme Set Out in the FTC Act.**

The *Thunder Basin* doctrine recognizes that when Congress creates a comprehensive statutory review scheme—a scheme that requires litigants to first raise their claims in an administrative forum and then allows them to appeal directly to a court of appeals—litigants must follow that process to raise their claims. *See Thunder Basin*, 510 U.S. at 215. If they try to bypass it, district courts lack jurisdiction to hear their claims. *See id.*

"[C]ourts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *Arch Coal*, 888 F.3d at 498 (quoting *Jarkesy*, 803 F.3d at 15). The Supreme Court has held that this principle applies equally to constitutional challenges to agency action. *See, e.g., Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1, 10 (2012).

The Supreme Court's latest word on the *Thunder Basin* doctrine is *Elgin v. U.S. Department of Treasury*, 567 U.S. 1 (2012), which Plaintiff conspicuously ignores. There, the Court addressed *Thunder Basin* in the context of a facial constitutional challenge to the Military Selective Service Act. 567 U.S. at 7. Former federal employees who had been removed from employment for failing to register for the Selective Service brought their facial challenge in district court. *Id.* The Court held that the doctrine precluded district court jurisdiction, "even for employees who bring constitutional challenges[,]" because the Civil Service Reform Act provides for administrative review before the Merit Systems Protection

---

appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Id.* (second alteration in original) (citation omitted). But Plaintiff must also satisfy the *Winter* factors. *Id.* at 1134–35. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*

Board, followed by direct appeal to the Federal Circuit. *Id.* at 13. The plaintiffs were required to follow that review scheme even though they raised a constitutional claim and even though the Board believed it lacked the authority to declare a federal statute unconstitutional. *Id.* at 16–17.

>    1.    *The FTC Act Creates a Comprehensive and Exclusive Review Scheme.*

The first step of the *Thunder Basin* analysis looks to the text, structure, and purpose of the statutory scheme. *See Elgin*, 567 U.S. at 10.[2] The FTC Act creates just the sort of review scheme found by other courts to be both comprehensive and exclusive.

The FTC Act sets out a comprehensive process for adjudicating claims at the agency level. It allows respondents to present evidence and to challenge the charges against them at a hearing before an ALJ. 15 U.S.C. § 45(b). Respondents can appeal any adverse ALJ decision to the Commission. *See* 5 U.S.C. § 557(b); 16 C.F.R. §§ 3.52–3.54. And final cease-and-desist orders permit respondents to pursue direct judicial review in a court of appeals. *See* 15 U.S.C. § 45(b). This is largely the same scheme found by courts to provide the exclusive path to judicial review. *See, e.g.*, *Thunder Basin*, 510 U.S. at 207–16 (Mine Act, 30 U.S.C. §§ 814, 816, 826); *Bennett*, 844 F.3d at 177–78 (Exchange Act, 15 U.S.C. § 78u-3(a)); *Arch Coal*, 888 F.3d at 499–500 (Black Lung Benefits Act, 33 U.S.C. §§ 921, 932); *Bank of La.*, 919 F.3d at 924 (12 U.S.C. § 1818).[3]

And like the Mine Act and the Exchange Act, the FTC Act expressly makes court of appeals jurisdiction over challenges to the Commission's final orders "exclusive."[4] *Compare* 15 U.S.C. § 45(d), *with* 30 U.S.C. § 816(a)(1), *and* 15 U.S.C. § 78y(a)(3). Like both of those Acts, the FTC Act declines to carve constitutional claims out of its review scheme. *Compare*

---

[2] Plaintiff doesn't address this step. *See* Pl.'s Mot. at 3.

[3] *See also Morris & Dickson Co. v. Whitaker*, 360 F. Supp. 3d 434, 439, 452 (W.D. La. 2018) (Controlled Substances Act, 21 U.S.C. §§ 824, 877), *appeal dismissed sub nom. Morris & Dickson Co., L.L.C. v. Barr*, No. 19-30043, 2019 WL 3230978 (5th Cir. Apr. 1, 2019).

[4] The D.C. Circuit held that the Black Lung Benefits Act is exclusive even though it does not use the word "exclusive." *Arch Coal*, 888 F.3d at 499 (citing 33 U.S.C. § 921(c)).

15 U.S.C. § 45(d), *with* 30 U.S.C. § 816(a)(1), *and* 15 U.S.C. § 78y(a)(3). Indeed, the FTC Act says the courts of appeals have exclusive jurisdiction over challenges to "orders of the Commission," 15 U.S.C. § 45(d)—there is no qualifying language.

Further, like the Mine Act and Exchange Act, the FTC Act provides for limited district court jurisdiction in only special circumstances that do not apply here.[5] *Compare* 15 U.S.C. §§ 45(*l*), 45(m), 45b(e)(1), *with* 30 U.S.C. § 818, *and* 15 U.S.C. § 78u(d)(1). Authorization of district court review for only certain types of claims "demonstrates that Congress knew how to provide alternative forums for judicial review based on the nature of a[] . . . claim," but that it "intended no such exception" for all other claims. *Elgin*, 567 U.S. at 13; *see also Arch Coal*, 888 F.3d at 499–500 ("express[] authoriz[ation]" of district court jurisdiction "in only two narrow circumstances" "leaves no role for district court review of [other cases]").

Finally, the FTC's discretion to enforce the FTC Act by initiating administrative proceedings or by filing suit in a district court, 15 U.S.C. §§ 45(a)–(b), 53(b), does not meaningfully change the analysis. In fact, the Exchange Act gives the SEC the same discretion, 15 U.S.C. §§ 78u(d), 78u-2, 78u-3, and the *SEC ALJ Cases* all held that it is the exclusive means for challenging the constitutionality of proceedings before the SEC. As one court explained, "Congress granted the choice of forum to the *Commission*, and that authority could be for naught if respondents [in administrative proceedings] could countermand the Commission's choice by filing a court action." *Jarkesy*, 803 F.3d at 17 (emphasis added).

    *2.*    *Plaintiff's Claims Fall Within the FTC Act's Review Scheme.*

"A claim will be found to fall outside of the scope of" a comprehensive review scheme "in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim is wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *Arch Coal*, 888 F.3d at 500. Plaintiff's claims satisfy none of these requirements.

---

[5] So too for the Black Lung Benefits Act. *See* 33 U.S.C. § 921(d); 30 U.S.C. § 934(b)(4)(A).

Under the first factor, if Plaintiff does not prevail before the Commission, it may undisputedly raise its constitutional claims to a court of appeals, which is "fully competent to adjudicate" the claims. *Elgin*, 567 U.S. at 17; *see also* 15 U.S.C. § 45(c). Thus, meaningful judicial review—"the most important factor in the *Thunder Basin* analysis," *Bennett*, 844 F.3d at 183 n.7—is plainly available, *see, e.g.*, *Hill*, 825 F.3d at 1245; *Bebo*, 799 F.3d at 774 (meaningful review available because "[a]fter the pending enforcement action has run its course, [plaintiff] can raise her objections in a circuit court of appeals established under Article III").

Plaintiff's argument—that it "cannot 'meaningfully pursue [its] constitutional claims' outside this Court" because the Commission has no authority to decide a constitutional claim, Pl.'s Mot. at 3 (citing *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010))—was squarely rejected by the Supreme Court in *Elgin*. In *Elgin*, plaintiffs similarly argued that the statutory scheme offered "no meaningful review" of their facial statutory challenge "because the [agency] lack[ed] authority to declare a federal statute unconstitutional." 567 U.S. at 16. The Court rejected the argument and held that the scheme provides for meaningful review by allowing plaintiffs to seek review in "an Article III court fully competent to adjudicate" their constitutional claims. *Id.* at 17;[6] *see also Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 630 (4th Cir. 2018) (agency's "inability to resolve Plaintiffs' constitutional claims does not mean that the statutory scheme deprives Plaintiffs of meaningful judicial review"), *cert. denied sub nom. Berkley v. FERC*, 139 S. Ct. 941 (2019).[7]

---

[6] Plaintiff cites *Jones Brothers, Inc. v. Secretary of Labor*, 898 F.3d 669 (6th Cir. 2018), as supporting the proposition that the Commission has no power to decide a facial constitutional challenge. Pl.'s Mot. at 3–4. But Plaintiff does not claim that *Jones* undermines the meaningful-judicial-review analysis under *Thunder Basin*. Nor could it. The court in *Jones* recognized that requiring a plaintiff to proceed through an administrative process "still make[s] good sense," even if an agency has "no authority to invalidate the statutes at issue," because "the crucible of administrative review ensures that the petitioner's case presents a true constitutional dispute before the Judiciary steps in to decide those weighty issues." 898 F.3d at 675–76. Nor does *Howard v. FAA*, 17 F.3d 1213 (9th Cir. 1994), *see* Pl.'s Mot. at 4, change things. For starters, *Howard* does not even address *Thunder Basin*. And the plaintiff in *Howard* was in a different position than Plaintiff here: the plaintiff in *Howard* appealed a final agency order. 17 F.3d at 1215. Plaintiff here, by contrast, does not.

[7] Plaintiff argues that the Commission has no power to decide its constitutional

1    Plaintiff's other argument—that the FTC Act allows for review of a cease and desist

2  order only, and it is challenging the agency's structure and procedures rather than "a specific

3  action taken by it," Pl.'s Mot. at 4—has been rejected in the courts of appeals. For example,

4  in *Hill*, the Eleventh Circuit recognized that a review provision "covering all final [agency]

5  orders without exception" demonstrated Congress's intent that "any challenge to a final

6  Commission order, even one framed as a constitutional challenge to the *administrative process*

7  *itself*, . . . receive judicial review" in the court of appeals. 825 F.3d at 1243 (emphasis added);

8  *see also id.* (plaintiffs' "constitutional challenges are essentially objections to forthcoming

9  Commission orders").  The same goes for § 45(c).

10    Plaintiff also notes that its constitutional claims "will not be addressed or reflected in

11  any 'cease and desist order,'" Pl.'s Mot. at 4, but Plaintiff does not argue that this will

12  prevent it from raising its constitutional claims in the court of appeals—it will of course be

13  able to. That argument is inconsistent with *Elgin* anyway. *See* 567 U.S. at 17 (explaining that

14  "an Article III court [was] fully competent to adjudicate" plaintiffs' constitutional claims,

15  even though the agency claimed it lacked the power to pass on those claims). And Plaintiff

16  claims that filing suit in this Court was the only way it could pursue its constitutional claims

17  because the administrative action that would produce a cease and desist order had not even

18  begun. Pl.'s Mot. at 4. But the Eleventh Circuit in *Hill* also rejected the first-to-file argument.

19  *Hill*, 825 F.3d at 1248 ("We are also unmoved by the [plaintiffs'] contention that the timing

20  of their complaint in federal court—before the Commission initiated an administrative

21  enforcement proceeding—grants them license to bypass the review procedures set out in

22  [the Exchange Act]."); *id.* at 1249 ("[I]t makes no difference that the [plaintiffs] filed their

23  complaint in the face of an impending, rather than extant, enforcement action. The critical

24  claims.  But in practice, the Commission does decide the merits of constitutional claims. In

25  fact, just months ago, the Commission rejected two of the constitutional claims that Plaintiff
     raises here. *See Otto Bock Healthcare N. Am., Inc.*, Trade Reg. Rep. P 80990 (F.T.C. 2019)

26  (rejecting Article II challenge to ALJ's protection from removal and equal protection
     challenge to the FTC Act); *see also LabMD, Inc.*, Trade Reg. Rep. P 79708 (F.T.C. 2016)

27  (rejecting a due process argument similar to Plaintiff's), *vacated by LabMD, Inc. v. FTC*, 894
     F.3d 1221 (11th Cir. 2018). Thus, when Plaintiff raises its claims before the Commission,

28  Plaintiff will have a more robust review than the plaintiffs in *Elgin*.

1  fact is that the [plaintiffs] can seek full postdeprivation relief under [the Exchange Act]."

2  (footnote omitted)). Here, Plaintiff can seek postdeprivation relief under the FTC Act.

3  Indeed, its argument, if accepted, would allow parties to short-circuit the administrative

4  process by racing to district court during an investigation.[8]

5          Under the second factor, Plaintiff's claims are not "wholly collateral" to the review

6  scheme. When a claim "arises out of the enforcement proceeding and provides an

7  affirmative defense" in that proceeding, it is not wholly collateral. *Bennett*, 844 F.3d at 187;

8  *accord Tilton*, 824 F.3d at 288. Even a facial constitutional challenge that an agency believes it

9  lacks authority to adjudicate is not "wholly collateral" to a review scheme when it serves as

10  "the vehicle by which" a party seeks to reverse agency action. *Elgin*, 567 U.S. at 22; *see also*

11  *Berkley*, 896 F.3d at 632 (noting that "Plaintiffs' constitutional claims are the means by which

12  they seek to vacate" the agency action and thus were not wholly collateral to the review

13  scheme). Here, the sole object of Plaintiff's constitutional claim is to stop the Commission's

14  enforcement proceedings. *See* Compl. at 28 (prayer for relief). Thus, its claim is "inextricably

15  intertwined with the conduct of the very enforcement proceeding the statute grants the

16  [agency] the power to institute and resolve as an initial matter." *Jarkesy*, 803 F.3d at 23

17  (citation omitted); *see also LabMD, Inc. v. FTC*, 776 F.3d 1275, 1280 (11th Cir. 2015)

18  (plaintiff's constitutional challenges to the administrative proceeding were "intertwined" with

19  the agency proceeding itself and thus could not be heard in the district court before the

20  agency issued a final decision).[9]

21

22          [8] Plaintiff may argue that it will be harmed by the exposure to the unconstitutional

23  process itself—not the impending cease and desist order—and thus has no way of pursuing
    meaningful judicial review. But courts have consistently rejected this exact argument as a

24  basis for subverting the scheme set out by Congress. *See, e.g.*, *Hill*, 825 F.3d at 1245–46
    (rejecting argument that post-proceeding review "cannot cure the injury [plaintiffs] will

25  suffer—enduring an unconstitutional administrative process"); *Tilton*, 824 F.3d at 286
    ("[B]eing subject[] to an unconstitutional adjudicative procedure" "alone does not render

26  post-proceeding judicial review less than meaningful." (citation omitted)); *Bebo*, 799 F.3d at
    775.

27          [9] Plaintiff's claim that its acquisition did not violate the antitrust laws, Compl. ¶¶ 63–

28  69 is not at issue in this motion, but it also arises directly out of the administrative
    proceedings.

1    Plaintiff's repackaged argument that its claims are wholly collateral to any potential

2    FTC order because it challenges the constitutionality of the agency's structure and

3    procedures, Pl.'s Mot. at 4–5, is, again, at odds with both *Elgin* and the recent courts of

4    appeals decisions applying it. Relatedly, Plaintiff's argument that its claims are wholly

5    collateral because they are unrelated to the merits of the merger, *id.* at 5, misses the point.

6    The relevant question is not whether the claim addresses an issue similar to the substance of

7    the underlying administrative proceeding, but whether it "arises out of the enforcement

8    proceeding and provides an affirmative defense" in that proceeding, *Bennett*, 844 F.3d at 187.

9    And under the third factor, though Plaintiff's constitutional claims do not concern

10   the industry-specific issues the FTC typically addresses, a "broader conception of agency

11   expertise [applies] in the jurisdictional context." *Tilton*, 824 F.3d at 289. In *Elgin*, the Supreme

12   Court held that the agency could "apply its expertise" to a facial constitutional challenge to a

13   statute—even though the agency disclaimed authority to adjudicate that challenge—because

14   the claim could "involve other statutory or constitutional claims," the resolution of which

15   "in the employee's favor might fully dispose of the case." 567 U.S. at 22–23. That is, because

16   the plaintiff could prevail on the underlying claims and thereby moot the constitutional

17   claim, the latter fell within the agency's expertise. *Id.* at 23; *see also Bennett*, 844 F.3d at 187–88

18   (agency "could bring its expertise to bear here by concluding that the . . . substantive claims

19   are meritless, thereby fully disposing of the case before reaching the constitutional

20   question"); *Hill*, 825 F.3d at 1250 ("As in *Elgin*, here the Commission might decide that the

21   [agency's] substantive claims are meritless and thus would have no need to reach the

22   constitutional claims."); *Berkley*, 896 F.3d at 633 (same). So too here. Indeed, this conclusion

23   is consistent with the basic principle of constitutional avoidance. "[O]ne of the principal

24   reasons to await the termination of agency proceedings is 'to obviate all occasion for judicial

25   review.'" *Standard Oil*, 449 U.S. at 244 n.11 (citation omitted).

26   Plaintiff tries to avoid this conclusion by suggesting that *Free Enterprise* controls this

27   case. Pl.'s Mot. at 5–6. But all six courts of appeals that have considered whether a statute's

28   exclusive review scheme applies to constitutional claims disagree. *See Bennett*, 844 F.3d at 186;

1   *Hill*, 825 F.3d at 1247–48; *Tilton*, 824 F.3d at 288–89; *Bebo*, 799 F.3d at 774; *Jarkesy*, 803 F.3d

2   at 19–20; *Bank of La.*, 919 F.3d at 926–27; *see also Morris & Dickson Co. v. Whitaker*, 360 F.

3   Supp. 3d 434, 447–48 (W.D. La. 2018) (rejecting argument that *Free Enterprise* was "on all

4   fours" with post-*Lucia* challenge to removal of DEA ALJs), *appeal dismissed sub nom. Morris &*

5   *Dickson Co., L.L.C. v. Barr*, No. 19-30043, 2019 WL 3230978 (5th Cir. Apr. 1, 2019).

6           In *Free Enterprise*, the Supreme Court held that the Exchange Act did not preclude

7   district court jurisdiction over a challenge to the removal protections for members of the

8   PCAOB, a self-regulatory organization subject to SEC oversight. 561 U.S. at 489–91. Central

9   to this conclusion, however, was the fact that the plaintiffs lacked a guaranteed path to

10  federal court because § 78y "provides only for judicial review of *Commission* action," not of

11  PCAOB action, "and not every [PCAOB] action is encapsulated in a final Commission order

12  or rule." *Id.* at 490. Thus, without district court jurisdiction, a plaintiff wanting to challenge

13  the PCAOB's existence would either need to challenge a "random" PCAOB rule—an option

14  the Court found "odd" because the Exchange Act only made "new rules, and not existing

15  ones . . . subject to challenge"—or violate the law—"bet[ting] the farm" by courting

16  potential "severe punishment" just to get their day in court. *Id.* (emphasis omitted) (citation

17  omitted). Neither of these options were considered "meaningful." *Id.* at 490–91 (citation

18  omitted).[10]

19  _____

20          [10] *Time Warner Entertainment Co., L.P. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996) (per
    curiam), *see* Pl.'s Mot. at 4 n.3, is distinguishable for the same reason. There, plaintiffs
21  challenged the Cable Television Consumer Protection and Competition Act as facially
    unconstitutional. 93 F.3d at 963. The court held that it had jurisdiction because plaintiffs'
22  claim was "entirely independent of any agency proceedings, whether actual or prospective."
    *Id.* at 965. So, like the plaintiffs in *Free Enterprise*, the plaintiffs in *Time Warner* would have
23  needed to "intentionally incur[] a sanction by the [agency] so as to create an administrative
    action" where they could raise their claim, *see Berkley*, 896 F.3d at 632. *See also Berkley v.*
24  *Mountain Valley Pipeline, LLC*, No. 7:17-CV-00357, 2017 WL 6327829, at *7 (W.D. Va. Dec.
    11, 2017) (explaining that *Time Warner* was similar to *Free Enterprise*—and thus different from
25  *Thunder Basin* and *Elgin*—for this reason), *aff'd*, 896 F.3d 624 (4th Cir. 2018). Here, Plaintiff
    must simply raise its claims in an ongoing proceeding. Similarly, *McNary v. Haitian Refugee*
26  *Center, Inc.*, 498 U.S. 479 (1991), *see* Pl.'s Mot. at 5, is inapposite. There, the Court permitted
    undocumented aliens to challenge an agency procedure without undergoing an
27  administrative deportation proceeding because doing so would require them to "voluntarily
    surrender themselves for deportation," which was "tantamount to a complete denial of
28  judicial review for most undocumented aliens." 498 U.S. at 496–97. In other words, unlike

But Plaintiff is in a much different position here. It need not "erect a Trojan-horse challenge to an [FTC] rule" to "have [its] claims heard." *Jarkesy*, 803 F.3d at 20; *accord Bennet*, 844 F.3d at 186. Instead, § 45(c) guarantees that Plaintiff can raise its constitutional claims before a court of appeals, assuming it does not prevail in the administrative forum. Nor does Plaintiff need to invite punishment; it must simply raise its claims in a proceeding that has already begun. *See Hill*, 825 F.3d at 1248 (plaintiffs "need not bet the farm to test the constitutionality of the [SEC ALJs' appointment process" where they "have already taken the actions that allegedly violated securities laws"); *Bebo*, 799 F.3d at 774 (same). Every post-*Elgin* decision has distinguished *Free Enterprise* on these grounds.[11]

Finally, Plaintiff tries to justify its attempt to bypass the statutory review process by reframing that attempt as a failure-to-exhaust problem and by arguing that the Ninth Circuit excuses the exhaustion requirement when the agency's position "appears already set." *See* Pl.'s Mot. at 6 n.5. This argument fails because the *Thunder Basin* doctrine is not a prudential exhaustion concern. Rather, when Congress sets out an exclusive statutory review scheme, that scheme "*divest[s] the district court of jurisdiction* to hear claims [that Congress intended] to come to federal court through the administrative review scheme." *Berkley*, 896 F.3d at 629 (emphasis added). Here, if this Court agrees that the FTC Act sets out an exclusive statutory review scheme, it must dismiss for lack of subject matter jurisdiction.

## B.   The Court Lacks Jurisdiction Because Plaintiff Does Not Challenge Final Agency Action.

The Court also lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff does not challenge final agency action.

---

Plaintiff, those individuals would need to "bet the farm" to seek judicial review, *Free Enter.*, 561 U.S. at 490 (citation omitted). *See, e.g., Jarkesy*, 803 F.3d at 20–21 (distinguishing *McNary* on this ground); *see also Bebo*, 799 F.3d at 775 n.3 (same).

[11] *See Bennett*, 844 F.3d at 182; *Hill*, 825 F.3d at 1247–48; *Tilton*, 824 F.3d at 284, 288–89; *Bebo*, 799 F.3d at 774–75; *Jarkesy*, 803 F.3d at 20; *Berkley*, 896 F.3d at 632–33; *Cochran v. SEC*, No. 4:19-CV-066-A, 2019 WL 1359252, at *3 (N.D. Tex. Mar. 25, 2019), *enjoined pending appeal*, No. 19-10396 (5th Cir. Sept. 24, 2019), *and appeal argued*, No. 19-10396 (5th Cir. Nov. 5, 2019); *Raymond J. Lucia Cos. v. SEC*, No. 18-CV-2692 DMS (JLB), 2019 WL 3997332, at *2 n.3 (S.D. Cal. Aug. 21, 2019), *appeal docketed*, No. 19-56101 (9th Cir. Sept. 18, 2019); *Morris & Dickson*, 360 F. Supp. 3d at 447–48.

If "the substantive statutes under which [a plaintiff] seeks relief do not provide for a private right of action," then "[t]o obtain judicial review under the APA, [the plaintiff] must challenge a final agency action." *Or. Nat. Desert*, 465 F.3d at 982. "[F]inality is . . . a jurisdictional requirement." *See Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) (emphasis omitted) (citation omitted). An action is final only if it marks "the consummation of the agency's decision making process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Gallo Cattle Co. v. USDA*, 159 F.3d 1194, 1198–99 (9th Cir. 1998) (citation omitted).

Here, the only private right of action that Plaintiff properly raises is the APA. Compl. ¶ 17 (citing 5 U.S.C. §§ 702 and 704). Yet Plaintiff does not challenge any FTC action that could be considered final. *See Standard Oil*, 449 U.S. at 239 (holding that an FTC complaint is not final agency action); *LabMD*, 776 F.3d at 1278–79 (same). The administrative proceeding is ongoing. The Commission has not yet issued a final order; indeed, the ALJ hearing is almost four months away, FTC Compl. at 11. Plaintiff's mere participation in the administrative process imposes no legal consequences until that process is complete. *City of San Diego v. Whitman*, 242 F.3d 1097, 1102 (9th Cir. 1998) (for action to be final it must "impose an obligation, deny a right or fix some legal relationship"). No sanction can be imposed on Plaintiff until the Commission issues a cease and desist order. And Plaintiff could prevail before the Commission and thus never face any agency action that imposes legal obligations. So, until the administrative proceeding is complete, there is no final Commission action.

Plaintiff's Complaint claims to cite non-APA causes of action for its claims, but none has merit. Plaintiff's constitutional claims do not state a separate private right of action outside the context of Plaintiff's ongoing administrative proceeding. If they did, any regulated entity could delay adjudication of an ongoing proceeding by pleading a constitutional challenge to the administrative process. *See Standard Oil*, 449 U.S. at 242–43 ("Judicial review . . . should not be a means of turning prosecutor into defendant before adjudication concludes."). Plaintiff leans on federal question jurisdiction under 28 U.S.C. §

1331, *see* Pl.'s Mot. at 3, but § 1331 is no help because "Congress can . . . impliedly preclude [district court] jurisdiction by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court," *Bennett*, 844 F.3d at 178. And, for the reasons explained above, Congress did just that with the FTC Act. Plus, without the APA hook, there is no sovereign immunity waiver, and Plaintiff cannot sue the federal government. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). Likewise, Plaintiff's invocation of the Declaratory Judgment Act, Compl. ¶ 17 (citing 28 U.S.C. § 2201), does not create a private right of action. *See Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005) ("[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction . . . .").

Thus, Plaintiff's claims sound in the APA, but Plaintiff fails to challenge any final agency action by the FTC, *see, e.g., Standard Oil*, 449 U.S. at 239 ("The [Federal Trade] Commission's issuance of its complaint was not 'final agency action.'").[12]

## II.   Plaintiff Cannot Show That It Will Suffer Irreparable Harm If the Administrative Proceeding Continues.

Plaintiff's motion also fails because it cannot show irreparable harm.

Most importantly, until the Commission issues a final cease and desist order, Plaintiff is not obligated to do anything. Plaintiff argues that it will suffer an irreparable injury if it is

---

[12] Plaintiff's claims fail on the merits as well.  Its due process claim is barred by Supreme Court precedent. *See Withrow v. Larkin*, 421 U.S. 35, 47–48 (1975) (rejecting claim that "combination of investigative and adjudicative functions" in single agency is unconstitutional). Its suggestion that Congress's decision to create an administrative process for one agency under a particular statutory scheme violates the Equal Protection Clause simply because a different agency has no such process under a different statutory scheme has no basis in law.  Similarly, its Article II claim fails because (1) its challenge to the removal protections of FTC Commissioners is inconsistent with directly on-point Supreme Court precedent, *see Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935) (upholding constitutionality of for-cause removal protections for FTC Commissioners); and (2) the removal provisions for FTC ALJs can be construed in a way that's consistent with separation-of-powers principles, as the United States explained to the Supreme Court in *Lucia v. SEC*, *see* 138 S. Ct. 2044, 2060–62 (2018) (Breyer, J., concurring in the judgment in part and dissenting in part). But in light of the insurmountable jurisdictional obstacles to Plaintiff's claims, the Government does not address the merits here and instead reserves its right to do so at a future stage.

forced to participate in unconstitutional administrative proceedings because, Plaintiff says, "irreparable harm is presumed" "[w]here constitutional rights are at issue." *See* Pl.'s Mot. at 15 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 700 (7th Cir. 2011)).[13] This is wrong. *See Tilton*, 824 F.3d at 285 ("[P]ost-proceeding relief . . . suffices to vindicate the litigant's constitutional claim."); *Bennett*, 844 F.3d at 184-85 ("The burden of defending oneself in an unlawful administrative proceeding, however, does not amount to irreparable injury."); *Home Loan Bank Bd. v. Mallonee*, 196 F.2d 336, 380 (9th Cir. 1952) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted, and this is true though it be asserted (as here) that the mere holding of the prescribed administrative hearing would result in irreparable damage.").

None of the authority that Plaintiff cites suggests that participating in administrative enforcement proceedings—even one later found unlawful or unconstitutional—amounts to *per se* irreparable harm. *See Standard Oil Co.*, 449 U.S. at 244. For example, Plaintiff relies on *Amos Treat & Co. v. SEC*, 306 F.2d 260 (D.C. Cir. 1962), *see* Pl.'s Mot. at 15—a case decided decades before both *Standard Oil* and *Thunder Basin*—but *Amos* doesn't even mention irreparable harm, let alone meaningfully analyze the issue.[14] Plaintiff's citation to *Ezell*, *see* Pl.'s Mot. at 15, fares no better. There, the Seventh Circuit held only that the plaintiffs had shown irreparable harm on their facial constitutional challenge to a city ordinance that banned firing ranges. 651 F.3d at 690, 698–700. That context—with no statutory review scheme or administrative proceeding—is fundamentally different from this case.

---

[13] Plaintiff suggests *Ezell v. City of Chicago*, 651 F.3d 684, 700 (7th Cir. 2011), says that irreparable harm is presumed when *all* constitutional rights are at issue. It doesn't—Plaintiff cherry picked the quote it relies on. *See id.* at 699 ([F]or *some* kinds of constitutional violations, irreparable harm is presumed." (emphasis added)); *id.* (mentioning First and Second Amendment rights only).

[14] *United Church of the Medical Center v. Medical Center Commission*, 689 F.2d 693 (7th Cir. 1982), *see* Pl.'s Mot. at 15, was also decided before *Thunder Basin* and is thus unpersuasive. And although *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045 (9th Cir. 1995), was decided after *Thunder Basin*, it's still unpersuasive because it doesn't mention *Thunder Basin*—and it's especially unpersuasive given the more recent decisions, including *Elgin*, that have faithfully applied *Thunder Basin*.

And even if Plaintiff's constitutional rights are ultimately violated, that injury is plainly reparable. After all, should Plaintiff not prevail before the Commission, it will have its constitutional claim adjudicated in federal court; Plaintiff cannot be irreparably injured just because it must raise its claim at the time and in the place Congress has specified. *See Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 630 (9th Cir. 1985) (holding that "delaying review until after [final agency action] will not prevent petitioners from obtaining full and effective relief").

Finally, Plaintiff argues that the financial burden of defending itself before the agency has imposed irreparable harm. Pl.'s Mot. at 16. But the Supreme Court has held that "the expense and annoyance of litigation," even if substantial, "is part of the social burden of living under government" and is not irreparable harm. *Standard Oil*, 449 U.S. at 244 (citation omitted).

## III. The Balance of Harms and the Public Interest Weigh Against an Injunction.

The third and fourth injunctive factors, the balance of harms and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors support denying Plaintiff's motion.

The FTC is statutorily charged with prohibiting "unfair methods of competition" that may harm the public. *See* 15 U.S.C. § 45(a)(2). The underlying case involves allegations that Plaintiff acquired its closest market competitor—eliminating competition—which will lead to higher prices and will thus harm the public. An injunction would interfere with the Commission's enforcement efforts and result in the type of delay that Congress sought to avoid by authorizing the FTC to use administrative proceedings. *Cf. Maryland v. King*, 133 S. Ct. 1, 3 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration in original) (citation omitted)); *see also Morris & Dickson*, 360 F. Supp. 3d at 450–51 (enjoining ongoing administrative proceedings "would effectively derail the administrative process for the time required for judicial review of the constitutional claim," which would inhibit agencies' ability "to do what [Congress] created them to do—enforce Acts of Congress").

Plaintiff argues that an injunction that delays administrative proceedings will not injure the Commission because the Commission never asked it "to hold the Vievu assets separate at any point during the more than 18 months that the FTC spent investigating the acquisition." Pl.'s Mot. at 16–17.[15] But an injunction would undeniably prevent the Commission from carrying out Congress's mandate: enforcing that FTC Act. And hamstringing the Commission would harm the public: police departments are already being harmed by the removal of VieVu as a competitor. Hedging its bets, Plaintiff then claims that an injunction will not delay the Commission's ability to challenge the merger because it can challenge the merger now in this Court. Pl.'s Mot. at 17. But Congress decided that the public interest would be served by allowing the Commission to choose its forum. That decision is entitled to the Court's respect. *Cf. INS v. Legalization Assistance Project*, 510 U.S. 1301, 1306 (1993) (staying district court injunction interfering with Government's execution of immigration statute as "an improper intrusion by a federal court into the workings of a coordinate branch of the Government"). Stripping the Commission of its ability to choose the forum would disrupt the Commission's functions.

Finally, as discussed above, Plaintiff faces no irreparable injury sufficient to outweigh the interests of Defendants and the public. Therefore, the balance of harms and the public interest also weigh against a preliminary injunction.

## Conclusion

For all these reasons, this Court should deny Plaintiff's motion.

---

[15] Plaintiff cites no authority for its claim that the public is injured by a delay in administrative proceedings only if the Commission asks the investigation target to hold separate the acquired assets during the Commission's investigation. Plaintiff became aware of the Commission's investigation shortly after its acquisition and could have held the VieVu assets separately. The Commission, however, had no authority to order Plaintiff to do so.

Dated: January 23, 2020                    Respectfully submitted,

                                           Joseph H. Hunt
                                           Assistant Attorney General

                                           Christopher R. Hall
                                           Assistant Branch Director

                                           /s/ *Bradley Craigmyle*
                                           Chetan A. Patil
                                           Rebecca Cutri-Kohart
                                           Bradley Craigmyle
                                           Trial Attorneys
                                           Federal Programs Branch
                                           U.S. Department of Justice, Civil Division
                                           P.O. Box. No. 883
                                           Ben Franklin Station
                                           Washington, DC 20044
                                           Telephone: (202) 616-8101
                                           Fax: (202) 616-8460
                                           Email: Bradley.T.Craigmyle@usdoj.gov
                                           *Counsel for Defendants*

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on the 23rd day of January 2020, I electronically filed the

3   foregoing with the Clerk of Court by using the CM/ECF system.  I certify that the following

4   party or its counsel of record are registered as ECF Filers and they will be served by the

5   CM/ECF system:

6

       Antony P. Kim
7       Garret Garretson Rasmussen
       Jonathan Adler Direnfield
8       Orrick Herrington & Sutcliffe LLP
9       1152 15th St. NW
       Washington, DC 20005
10      202-339-8493
       Fax: 202-339-8500
11      Email:  akim@orrick.com
12            grasmussen@orrick.com
            jdirenfeld@orrick.com
13

14      Pamela Beth Petersen
       Axon Enterprise Incorporated
15      17800 N 85th St.
16      Scottsdale, AZ 85255-9603
       623-533-3875
17      Fax: 623-572-4253
18      Email: ppetersen@axon.com

19      Thomas King-Sun Fu
20      Orrick Herrington & Sutcliffe LLP
       777 S Figueroa St., Ste. 3200
21      Los Angeles, CA 90017
22      213-612-2458
       Fax: 213-612-2499
23      Email: tfu@orrick.com

24      *Counsel for Plaintiff*

25

26                        /s/ *Bradley Craigmyle*
27                        Bradley Craigmyle

28