Aditya Dynar
(Arizona Bar No. 031583)
**New Civil Liberties Alliance**
1225 19th St. NW, Suite 450
Washington, DC 20036
(202) 869-5210
Adi.Dynar@NCLA.legal
*Attorney for Amicus Curiae*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Axon Enterprise, Inc., | No. 2:20-cv-00014-PHX-DWL |
| *Plaintiff* | (Assigned to Hon. Dominic W. Lanza) |
| v. | |
| Federal Trade Commission, et al., | |
| *Defendants* | |

**BRIEF AMICUS CURIAE OF THE
NEW CIVIL LIBERTIES ALLIANCE
IN SUPPORT OF PLAINTIFF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... iii

Interest of Amicus Curiae ................................................................................................. 1

Summary of Argument ...................................................................................................... 2

Argument ........................................................................................................................... 4

I.    FTC Antitrust Enforcement Is Non-Exclusive and Materially Different
      from the Statutory Schemes Governing Mines or Federal Employees ......................... 4

II.   Constitutional Claims that Go to the Existence of the Challenged
      Tribunal Are Different, as Cases Outside the Trilogy Acknowledge ........................... 11

Conclusion ....................................................................................................................... 17

Certificate of Service ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) ........................................................ 2

*Cochran v. SEC*, No. 19-10396 (5th Cir. Sep. 24, 2019) ...................................... 9, 17

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ...................................... 2, 4, 7, 10, 12

*Finnerty v. Cowen*, 508 F.2d 979 (2d Cir. 1974) ................................................ 15

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) .................... *passim*

*FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007) ...................................... 5

*FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016) ...................................... 5

*FTC v. Qualcomm*, No. 19-16122, (9th Cir.) https://www.ca9.uscourts.gov/content/view.php?pk_id=0000001003 ...................... 5

*Guerrero-Lasprilla v. Barr*, 589 U.S. __, No. 18-776, 2020 WL 1325822 (Mar. 23, 2020) ....................................................................... 8, 12

*Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017) ................................ 5

*Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016) ....................................................... 3

*Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015) ..................................................... 3

*Jewel Co., Inc. v. FTC*, 432 F.2d 1155 (7th Cir. 1970) ........................................ 2, 4, 15

*LabMD v. FTC*, 776 F.3d 1275 (11th Cir. 2015) ................................................... 9

*Leedom v. Kyne*, 358 U.S. 184 (1958) ............................................................ 12

*Lehigh Portland Cement Co. v. FTC*, 291 F. Supp. 628 (E.D. Va. 1968) .......................... 15

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) ...................................................... *passim*

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) .............................. *passim*

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) .................. 11

*Pepsico, Inc. v. FTC*, 472 F.2d 179 (2d Cir. 1972), *cert. denied*, 414 U.S. 876 (1973) ............ 16

*Raymond J. Lucia Companies, Inc. v. SEC*, No. 18-cv-2692 DMS (JLB), 2019 WL 3997332 (S.D. Cal. Aug. 21, 2019), *on appeal* No. 19-56101 (9th Cir. Sep. 18, 2019) ......................................................... 10

*Seila Law LLC v. CFPB*, USSC No. 19-7 ......................................................... 3, 9

*Sunkist Growers, Inc. v. FTC*, 464 F. Supp. 302 (C.D. Cal. 1979)...................................................16

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)..........................................2, 4, 7, 10

*Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016)................................................................3, 15

*Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir. 1979) ....................................................15

*Ukia Valley Center v. FTC*, No. C 89 4494 AJZ, 1990 WL 25035 (N.D. Cal.),
    *aff'd* 911 F.2d 261 (9th Cir. 1990) .....................................................................16

*Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (2012) ....................................4, 15

## Statutes

15 U.S.C. § 45 ..........................................................................................................7

15 U.S.C. § 45(c) ...............................................................................................6, 14

15 U.S.C. § 45(d) .........................................................................................6, 7, 14

15 U.S.C. § 78y ......................................................................................................6

15 U.S.C. § 78y(a)(1) ............................................................................................6

15 U.S.C. § 78y(a)(3) ............................................................................................7

28 U.S.C. § 1331 ............................................................................................6, 14

## Other Authorities

FTC, *The Enforcers*, https://www.ftc.gov/tips-advice/competition-guid-
    ance/guide-antitrust-laws/enforcers.........................................................................4

Order Awarding Attorney's Fees, *LabMD v. FTC*, CA11 Docket No. 16-16270
    (11th Cir. Dec. 23, 2019) ....................................................................................10

Robert Teitelman, *Qualcomm's Big Setback Shows Regulators Can't Agree on Anti-
    trust and Patents*, https://www.barrons.com/articles/qualcomm-anti-
    trust-case-justice-department-ftc-51558661991 .........................................................5

Stipulated Order for Civil Penalty, Monetary Judgment and Injunctive Relief
    ¶ 7, *United States of America v. Facebook, Inc.*, Civ. No. 19-cv-2184
    (D.D.C. July 24, 2019) ........................................................................................8

**INTEREST OF AMICUS CURIAE**

The New Civil Liberties Alliance (NCLA) is a nonprofit, nonpartisan civil rights organization and public-interest law firm devoted to defending constitutional freedoms against systemic threats, including attacks by federal administrative agencies on due process, jury rights, and freedom of speech.[1] NCLA also opposes judicial abdication of courts' independent judgment through conventions of deference, avoidance, administrative exhaustion, and other impediments to the application and development of constitutional law. We uphold these constitutional rights on behalf of all Americans, of all backgrounds and beliefs, and we do this through original litigation, *amicus curiae* briefs, and other advocacy.

The "new civil liberties" of the organization's name include rights at least as old as the United States Constitution itself, such as the due process of law, jury trial, the right to be tried in front of an impartial and independent judge (not a partial and dependent ALJ), and the right to live under laws made by the nation's elected lawmakers through constitutionally prescribed channels (*i.e.*, the right to self-government). Yet these selfsame rights are also very contemporary—and in dire need of renewed vindication—precisely because Congress, administrative agencies like the Federal Trade Commission (FTC), and even sometimes the courts have neglected them for so long.

NCLA aims to defend civil liberties primarily by asserting constitutional constraints on the administrative state. Although Americans still enjoy the shell of their Republic, there has developed within it a very different sort of government—a type, in fact, that the Constitution was designed to prevent. This unconstitutional administrative state within the Constitution's United States is the focus of NCLA's concern. NCLA is particularly disturbed by this Court's preliminary conclusion that federal courts do not have jurisdiction to evaluate a facial challenge brought under the U.S. Constitution. While Count III of the Complaint asks the Court to take jurisdiction of the antitrust matters, *amicus* addresses solely the Court's jurisdiction over the

---

[1]    No counsel for any party authored this brief in whole or in part; and no person or entity other than NCLA and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief. All parties have consented to the filing.

1

constitutional claims asserted.

NCLA very rarely gets involved as an amicus in district court proceedings, but this case is of utmost importance to the issue of unconstitutional administrative law actions. Although the issues have been well joined by the Plaintiffs and expressed by the District Court, NCLA has an interest in informing the Court of certain issues and circumstances that warrant assertion of the Court's jurisdiction in this matter.

## SUMMARY OF ARGUMENT

On March 10, 2020 this Court issued its tentative order in this case. *Axon Enterprise Incorporated v. Federal Trade Commission, et al.*, No. 20-cv-00014-PHX-DWL, at ECF No. 29 (D. Ariz. 2020) ("Tentative Ruling"). The unusual nature of the Tentative Ruling and the invitation to the parties to address it in argument on April 1, 2020 is welcome and frankly acknowledges the extraordinary importance of the matters addressed by it and by this case. Courts in the past have noted the extraordinary leeway heretofore given federal agencies to avoid early determination of legal and constitutional issues while they put the private party through often pointless and burdensome administrative procedures. *See Jewel Companies, Inc. v. FTC*, 432 F.2d 1155, 1160 (7th Cir. 1970) ("On the one hand there is no longer the same violent disposition to fight the agencies willy-nilly; on the other, we have learned that agency procedures can be as long-drawn out, as wasteful, as oppressive as the worst of judicial procedures.") (severing the challenges to statutory authority from claims of lack of jurisdiction or improper commission voting procedure).

In the Tentative Ruling this Court analyzed the now increasingly controversial interplay among the Supreme Court's teachings in three key cases: *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994); *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010); and *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012). The Court, echoing *Bennett v. SEC*, 844 F.3d 174, 178 (4th Cir. 2016), referred to these three cases as "the trilogy." Tentative Ruling at 6. NCLA will follow the Court in using this term, even though it discounts the relevance of the

2

Supreme Court's 2018 decision in *Lucia v. SEC*—as will be discussed below. The Court also turned to cases in other circuits and noted that those circuits, often over strong dissent, had found no jurisdiction in the district courts for those cases. *See* Tentative Ruling at 12 n. 3. (reviewing the outcomes and reasoning of *Bennett*, 844 F.3d at 181–82; *Hill v. SEC*, 825 F.3d 1236, 1242–1245 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276, 282–81 (2d Cir. 2016); and *Jarkesy v. SEC*, 803 F.3d 9, 16–17 (D.C. Cir. 2015).

The Court further noted that cases finding jurisdiction because the claim is "wholly collateral" to the agencies' putative order "have either been directly overruled or had their holdings called into serious doubt." Tentative Order at 19. The Court also noted a current matter before the Supreme Court addresses similar issues. *Seila Law LLC v. Consumer Fin. Protection Bureau*, No. 19-7.[2] Tentative Ruling at 3. The Tentative Ruling dismisses Axon's argument that the Article II claim in this suit distinguishes it from the cases in the trilogy. *Id.* at 22. Finally, the Court dismisses Axon's argument regarding the lack of agency expertise in constitutional and statutory interpretation matters and the fact that FTC always rules for itself even when its ALJs initially find against it.

The Tentative Ruling did not analyze the effect of *Lucia v. SEC*, 138 S. Ct. 2044 (2018), and *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), or their progeny, on the issue of jurisdiction. NCLA addresses these crucial cases below.

The Court's Tentative Ruling is sophisticated and attempts to grapple with the swirling countercurrents of the trilogy and recent Supreme Court (and other courts') precedent, but NCLA believes the Ruling is incorrect because it fails to note a critical difference between the two other cases of the trilogy and *Free Enterprise*. NCLA also proposes a different harmonization of the "wholly collateral" and Article II claims regarding whether meaningful appellate review exists and why the structure of the FTC Act and FTC's jurisdiction make it much different from either the Mine Act or the Civil Service Reform Act of 1978 ("CSRA").

---

[2]     NCLA has submitted an *amicus* brief in support of Seila Law LLC in that case.

**ARGUMENT**

Nothing prevents this Court from keeping alive the constitutional and statutory claims here alleged and leaving the antitrust matters to FTC. *See Jewel Companies, Inc. v. FTC*, 432 F.2d 1155 (7th Cir. 1970) (separating and retaining constitutional claims and leaving others to the agency). Congressional intent of the FTC Act's purpose and design, as well as judicial interpretations of it demonstrate that Congress intended to prevent delay in FTC enforcement *but not* to grant FTC exclusive jurisdiction over collateral claims. *See Jewel Companies, Inc. v. FTC,* 432 F.2d at 1160 ("The existence of an important general question may warrant early review. Where such appeals are allowed they should be expedited lest they be used by the well-heeled to buy time."). Both goals, early review and preventing delay, would be realized by a simple act of *dépeçage* as used in *Jewel Companies, Inc.* The Ninth Circuit has approved retaining jurisdiction over facial constitutional claims against an agency even while disclaiming jurisdiction over the claims that are statutorily within the agency's jurisdiction. *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (2012) (finding jurisdiction over facial due process challenges to the Department of Veterans Affairs but not to any claims even in the face of explicit jurisdiction-stripping language in the statute).

## I.   FTC ANTITRUST ENFORCEMENT IS NON-EXCLUSIVE AND MATERIALLY DIFFERENT FROM THE STATUTORY SCHEMES GOVERNING MINES OR FEDERAL EMPLOYEES

FTC's enforcement powers, as it admits, are non-exclusive. FTC, *The Enforcers*.[3] The Department of Justice, state attorneys general, private parties and even international bodies have a place in the congressional scheme of antitrust enforcement. It cannot be, then, that the district courts alone are excluded. As noted in the Tentative Ruling, Congress provided for FTC either to go to federal court or to begin administrative adjudication. But *Congress knew the federal courts were open to the parties* that wanted to protect their constitutional rights. The Mine Act and CSRA may be jurisdiction-stripping for the claims in *Thunder Basin* and *Elgin*, but the

---

[3]   https://www.ftc.gov/tips-advice/competition-guidance/guide-antitrust-laws/enforcers

FTC Act is closer to the U.S. Securities & Exchange Commission (SEC) than to either of those other agencies or statutory schemes. It should also be noted that FTC is sometimes at loggerheads with other, more responsive, parts of the federal government on antitrust enforcement.[4] For example, the *Qualcomm* case has generated such intense interest that the Ninth Circuit has a special section on its website regarding it.[5] FTC has taken a diametrically opposite position from the Justice Department on interpretation of antitrust and patent enforcement.[6] *See also Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017) (Court rejected FTC's definition of "debt collector" under statute) (abrogating *FTC v. Check Investors, Inc.*, 502 F3d 159 (3d Cir. 2007). In *Qualcomm*, FTC went to the district court in the first instance. Can it seriously be imagined that the district courts have no role to play if the same assertion were to be made in an administrative hearing? Would private parties—and the Justice Department— have to wait through long-drawn out agency hearings to get a court ruling?

Under a non-exclusive antitrust enforcement regime, it is highly unlikely Congress divested the district courts of jurisdiction over constitutional claims. The Tentative Ruling, however, does not note this key difference among the statutory schemes under which the trilogy cases arose. *Free Enterprise Fund* deals with Sarbanes–Oxley and the Exchange Act, which are far closer in design and purpose to the FTC Act than are the statutes dealing with mines or federal civil servants.

So close are the FTC Act and the SEC (Exchange) Act, in fact, that the precedents under one law are used by courts (and by FTC) to support rulings under the other. *See, e.g., FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 600–603 (9th Cir. 2016) (adopting same burden-shifting test as under SEC precedent and citing SEC cases in the opinion). SEC does not have

---

[4]      Robert Teitelman, *Qualcomm's Big Setback Shows Regulators Can't Agree on Antitrust and Patents*, https://www.barrons.com/articles/qualcomm-antitrust-case-justice-department-ftc-51558661991

[5]      CA9, *FTC v. Qualcomm*, No. 19-16122, https://www.ca9.uscourts.gov/content/view.php?pk_id=0000001003

[6]      It is notable that here it appears that FTC is intent on stripping patent rights from Axon as part of settlement.

any power to decide constitutional issues, nor does FTC. Neither SEC (for securities), nor FTC (for consumer goods and services) has knowledge of all the businesses each is charged with regulating. This obvious difference among the statutes at issue counts against FTC here.

The route to appellate review, of Section 25 of the Exchange Act, discussed in *Free Enterprise,* codified at 15 U.S.C. § 78y, is virtually in *pari materia* with the FTC Act, Section 5, codified at 15 U.S.C. § 45(c). Both statutory provisions allow petitions to the circuit court when a party is injured by the actions of the commissions. The Supreme Court stated regarding the former statute: "[T]he text [of Section 25] does not expressly limit the jurisdiction that other statutes confer on district courts. *See, e.g.,* 28 U.S.C § 1331. Nor does it do so implicitly." *Free Enterprise*, 561 U.S. at 489. That language by the Supreme Court is the same finding as made in the Tentative Ruling, except for the last sentence—which is of paramount importance concerning jurisdiction. *See* Tentative Ruling at 11 (noting no express divesting of jurisdiction).

It is also relevant that *Free Enterprise* explicitly found jurisdiction over a constitutional claim almost on all fours with Axon's claim here. *Id.* at 491-492 (finding jurisdiction over a separation of powers constitutional claim against the Board and holding two levels of for-cause protection of such inferior officers unconstitutional). No Justice dissented from the finding of jurisdiction in the district court to address the constitutional claim raised in *Free Enterprise*. Axon challenges the authority of the ALJs under a similar theory to the one upheld as to SEC ALJs in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), and it does so in reliance on a jurisdictional provision in the FTC Act analogous to an SEC statutory provision which the Supreme Court has already decided confers jurisdiction in *Free Enterprise*.

It should be noted in the context of this Court's analysis and *Free Enterprise* that, under the FTC Act, jurisdiction in the circuit courts is wholly *permissive* not mandatory. It states that a party subject to a cease-and-desist order (not a victorious one) *may* petition the circuit courts. Only after the record is transmitted by FTC to the circuit court does jurisdiction become exclusive. 15 U.S.C. §§ 45(c), (d). This language, again, is in *pari materia* with 15 U.S.C. § 78y(a)(1), which *Free Enterprise* discussed, as is jurisdiction's becoming exclusive only upon

SEC's filing the record with the circuit court. 15 U.S.C. § 78y(a)(3). Hence, the statute interpreted in *Free Enterprise* is in structure, subject matter and design far closer to the FTC Act than that of the legislative schemes in *Thunder Basin* or *Elgin*. Those are the details that matter when assessing the relevance of cases decided under different statutory schemes. Further, neither *Thunder Basin* nor *Elgin* was addressing the validity of the ALJ to preside, whereas here, under the recent and far more salient decisions of *Free Enterprise* and *Lucia*, the Supreme Court has already provided the rule of decision on both jurisdiction and the merits.

As noted, the FTC Act, 15 U.S.C. § 45, also explicitly makes the jurisdiction of the circuit court *exclusive* only upon filing of the record by FTC. 15 U.S.C. § 45(d). This aspect of the statute demonstrates Congress knew how to make jurisdiction exclusive and did so explicitly elsewhere in the statute at issue. How could jurisdiction be exclusive before then? Just as with SEC's jurisdictional provision in *Free Enterprise*, so too jurisdiction here is not exclusive. The actual words of the FTC Act also make clear that review of the constitutional issues by the circuit court could be easily circumvented by FTC. The injured party is not given appellate redress if the commission's hearing does not go against him. *Id.* ("Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States."). Here the injury is being hauled before an unjust and unconstitutionally constituted tribunal. There will be no meaningful review and redress of that injury if it is not addressed as a threshold question. This is why *Free Enterprise* said:

> We do not see how petitioners could meaningfully pursue their constitutional claims under the Government's theory. Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule. The Government suggests that petitioners could first have sought Commission review of the Board's "auditing standards, registration requirements, or other rules." Brief for United States 16. But petitioners object to the Board's existence, not to any of its auditing standards. Petitioners' general challenge to the Board is "collateral" to any Commission orders or rules from which review might be sought. Cf. *McNary v. Haitian Refugee*

1    *Center, Inc.*, 498 U.S. 479, 491-92 (1991).

2    *Id.* 561 U.S. at 489

3        If no cease-and-desist order issues, a company would be subject to an unconstitutional

4    proceeding, and vindicated on the merits, but then never heard on the constitutional violation

5    because, as amply described in the party briefs, FTC is not empowered to decide constitutional

6    issues and does not do so.

7        While *amicus* frankly acknowledges that FTC's ruling against itself is unlikely, it is not

8    beyond the realm of possibility given the posture of this case. FTC retains the full ability not

9    to issue a cease-and-desist order against any company, likely mooting its appeal on any consti-

10   tutional claim. No court should sanction an agency's being given the power, by disclaiming

11   jurisdiction in the district courts, to remove an individual's ability to vindicate his constitutional

12   rights. Judicial review must be meaningful under the trilogy and other relevant Supreme Court

13   law. *Guerrero-Lasprilla v. Barr*, 589 U.S. __, __ S. Ct. __, No. 18-776, 2020 WL 1325822 (March

14   23, 2020)(citing *McNary's* "well-settled" and "strong presumption" of meaningful judicial re-

15   view and reversing Fifth Circuit's holding of no jurisdiction over equitable tolling claim). *Pos-

16   sible* eventual review at the agency's whim, which is what Axon has here, does not suffice.

17       Another similarity between SEC and FTC is that FTC requires all parties to waive any

18   right to petition the circuit court on their constitutional claims should they settle. *See, e.g.*,

19   Stipulated Order for Civil Penalty, Monetary Judgment and Injunctive Relief ¶ 7, *United States

20   of America v. Facebook, Inc.*, Civ. No. 19-cv-2184 (D.D.C. July 24, 2019). The Court should take

21   judicial notice of this practice. We have a situation where the agency at issue does not rule on

22   constitutional issues, requires defendants who settle any portion of the claim to waive subse-

23   quent federal-court review of constitutional issues, and can moot any petition for review by

24   failing to rule for itself. Add to this the *in terrorem* effects of an agency that says divest your

25   acquisition and transfer your intellectual property as we say, or we will tie you up in adminis-

26   trative proceedings designed to favor FTC and extinguish your claims altogether, and the lack

27   of meaningful review is plain. If the constitutional claims stay in this court, *neither side can delay*.

28

FTC's interest in anti-trust regulation goes forward, and Axon's constitutional claims get addressed without FTC gamesmanship skewing the outcome in its own forum.

Last fall, the Fifth Circuit in *Cochran v. SEC* stayed the administrative proceeding before the SEC after a district court's adverse ruling along the lines of this Court's Tentative Ruling. *Cochran v. SEC*, No. 19-10396 (5th Cir. Sep. 24, 2019) (granting Ms. Cochran's motion for an injunction pending appeal) (per E. Jones, A. Oldham, S. Higginson, JJ.). As the Tentative Ruling recognizes, the presence of jurisdiction for district courts to hear the exact Art. II question presented here is not beyond doubt. The circuits and the Supreme Court are analyzing issues right now on this matter. There are vigorous dissents where the agencies have won and lost. The situation is fluid.[7] FTC arguably retains the power to put a company through the administrative ringer and then either force settlement or, if no settlement is forthcoming, drop the matter without ruling—giving agencies incentives to avoid altogether the constitutional issues raised. This is outrageous given that in *Lucia* the Supreme Court directly stated that the prior method of appointing ALJs was unconstitutional. Given that, no district court should deny jurisdiction over a claim regarding the very constitutionality of the tribunal based on recent, authoritative Supreme Court precedent on the question.

The case of *LabMD v. FTC* is instructive. FTC brought its action and the defendant filed similarly to Axon here in district court, which found that it did not have jurisdiction. *LabMD v. FTC*, 776 F.3d 1275 (11th Cir. 2015) (affirming district court's finding of no jurisdiction). LabMD was then put through an administrative hearing that was costly, long and burdensome. It ceased business and was completely shut down. The ALJ actually found for LabMD. The Commission, as it always does in such circumstances, voided the ALJ's decision and issued its cease-and-desist order. LabMD, now destroyed and many years later, represented *pro bono,* appealed to the Eleventh Circuit. There, the only issue decided by the Court was the specificity of the FTC injunction, which LabMD won. *LabMD v. FTC*, 894 F.3d 1221

---

[7]     The Supreme Court will decide *Seila Law* by June and the Court may find it prudent to hold its Tentative Ruling until then.

(11th Cir. 2018). FTC having lost did not seek *certiorari* and LabMD, having won, could not reasonably do so. Thus, after the destruction of the company, its being subjected to an unconstitutional proceeding, and its having "won" because of the ridiculous unenforceability of the Order—the original constitutional matters raised by LabMD were never addressed. FTC's position was so unjustified that attorney's fees were awarded. *See* Order Awarding Attorney's Fees, CA11 Docket No. 16-16270 (11th Cir. Dec. 23, 2019). There was never an adjudication of the constitutional issues raised (other than the unconstitutionality of vague injunctions). The same Sword of Damocles lingers over Axon should this Court finalize its Tentative Ruling. This circumstance makes the instant case far closer to *Free Enterprise* where the aggrieved party could not get its reputation back than to *Thunder Basin* or *Elgin. LabMD* is not unique.

NCLA now represents Ray Lucia. *Lucia v. SEC*, 138 S. Ct. 2044 (2018). It has filed on his and his company's behalf a suit in California, now on appeal before the Ninth Circuit. *See Raymond J. Lucia Companies, Inc. v. SEC*, No. 18-cv-2692 DMS (JLB), 2019 WL 3997332 (S.D. Cal. Aug. 21, 2019), *on appeal* No. 19-56101 (9th Cir. Sep. 18, 2019). Mr. Lucia's odyssey belies blithe statements that eventual, possible appellate review is "meaningful review" for the type of injury—a defect in the tribunal itself—rather than any of its acts here alleged. His first unconstitutional proceeding began in 2012 eight years ago. Like FTC here, SEC lawfully could have brought that action in the district court. Instead, SEC hauled Mr. Lucia before an unconstitutionally appointed ALJ. Mr. Lucia and his company endured a six-week trial before that ALJ and an appeal to the Commission. There, two dissenting Commissioners correctly noted three years later that the ALJ who heard the case, Cameron Elliot, had levied hundreds of thousands of dollars in fines, revoked Mr. Lucia's licensure and issued a lifetime bar for violation of a rule the ALJ had "made up out of whole cloth." Those commissioners also correctly noted that constitutional questions such as the validity of the ALJ's appointment, could only be addressed by Article III courts. Nonetheless, appeal to the D.C. Circuit in 2015 was unavailing, and an evenly split *en banc* decision in 2016 tacitly affirmed that injustice. Even taking their case to the highest court of the land did not end the injury of being before an

unconstitutional tribunal. The Supreme Court agreed with Mr. Lucia on the ALJ's wrongful appointment, but he was sent back to the SEC, which failed to follow the Court's admonitions. From 2012 to 2018, SEC maintained a litigation position so erroneous that the Department of Justice ultimately took the extraordinary step of confessing error before the Supreme Court. The Supreme Court ordered in *Lucia v. SEC*, 138 S. Ct 2044, 2054–55 (2018), that Mr. Lucia should be afforded a hearing before a new, properly appointed ALJ or before the Commission itself. Proceeding in defiance of that command, SEC has persisted in prosecuting Mr. Lucia before an ALJ who is just as unconstitutional as the first one. This is not meaningful review or redress. It is turning the process into the punishment. A similar Kafkaesque fate awaits Axon.

## II.   CONSTITUTIONAL CLAIMS THAT GO TO THE EXISTENCE OF THE CHALLENGED TRIBUNAL ARE DIFFERENT, AS CASES OUTSIDE THE TRILOGY ACKNOWLEDGE

The Tentative Ruling is not clear as to whether the Court deems Axon's constitutional claims wholly collateral to the underlying claim. They are collateral, and that is another reason why the antitrust claims are so easily severed. For purposes of Axon's complaint in this court, it makes no difference whether Axon ultimately wins or loses on the merits at the FTC administrative level—it suffers the same constitutional injury regardless of the outcome. Moreover, if Axon succeeds on its claims in the district court, the administrative process would not be slowed in the meanwhile. The gravamen of the constitutional harm that Axon's complaint seeks to avoid is thus entirely distinct from any sanctions that might be imposed against it in the administrative proceeding. If Axon is right, this constitutional injury is not only very serious but also occurring in many dozens of other pending and future FTC administrative proceedings. Because Axon has lodged a colorable constitutional claim, federal courts have a duty to address it promptly rather than letting the injury persist until it is too late to provide meaningful relief. *Cf. New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358–59 (1989) (citing cases back to 1821 for the proposition that where federal jurisdiction is present, courts cannot "abdicate" it in favor of another jurisdiction).

Courts have acknowledged jurisdiction over constitutional claims that go to the heart of making the tribunal itself suspect, and these cases have not been overruled or even questioned by subsequent precedent. For instance, the Supreme Court in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), ruled that the district court had jurisdiction over an immigrant's constitutional claims even though the statute at issue provided for appellate review after agency decision and explicitly *barred other kinds of federal court review.* Critically, *Elgin* did not overrule *McNary v. Haitian Refugee Center, Inc.*, as the dissent cited it favorably and it was not disagreed with by the majority decision. While this brief was being finalized, the Supreme Court ringingly re-affirmed *McNary* and the principle that meaningful review is required to infer jurisdiction stripping. *Guerrero-Lasprilla v. Barr*, 589 U.S. __, __ S. Ct. __, No. 18-776, 2020 WL 1325822 (March 23, 2020)(citing *McNary's* "well-settled" and "strong presumption" of meaningful judicial review and reversing Fifth Circuit's holding of no jurisdiction over equitable tolling claim).

The difference between the constitutional claims in *McNary* and *Elgin* is instructive. As here, *McNary* was a facial challenge to the tribunal. *Elgin* did not attack the tribunal but the Selective Service Act under which plaintiffs were discharged. In *Elgin* the Court noted that such doctrines as "constructive discharge" might resolve constitutional issues as well. *Id.* at 22–23. That is not the case here. *See also Leedom v. Kyne*, 358 U.S. 184, 190 (1958) ("This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers") (and finding district court jurisdiction).

The *McNary* Court held it had jurisdiction to hear the constitutional claims. The Court stated at the outset:

> [T]he only question presented to us is whether § 210(e) of the Immigration and Nationality Act (INA)… precludes a federal district court from exercising general federal-question jurisdiction over an action alleging a pattern or practice of procedural due process violations by the Immigration and Naturalization Service (INS) in its administration of the SAW program. We hold that given the absence of clear congressional language mandating

preclusion of federal jurisdiction and the nature of respondents'
requested relief, the District Court had jurisdiction to hear re-
spondents' constitutional and statutory challenges to INS proce-
dures. Were we to hold otherwise and instead require respond-
ents to avail themselves of the limited judicial review procedures
set forth in § 210(e) of the INA, meaningful judicial review of
their statutory and constitutional claims would be foreclosed.

*Id.* at 483–84. The Supreme Court then noted:

The Reform Act expressly prohibited judicial review of such a
final administrative determination of SAW status except as au-
thorized by § 210(e)(3)(A) of the amended INA. That subsection
permitted 'judicial review of such a denial only in the judicial re-
view of an order of exclusion or deportation.' In view of the fact
that the courts of appeals constitute the only fora for judicial re-
view of deportation orders, *see* 75 Stat. 651, as amended, 8 U.S.C.
§ 1105a, the statute plainly foreclosed any review in the district
courts of individual denials of SAW status applications. Moreo-
ver, absent initiation of a deportation proceeding against an un-
successful applicant, judicial review of such individual determina-
tions was completely foreclosed.

*Id.* at 485–6. It found:

Given Congress' choice of statutory language, we conclude that
challenges to the procedures used by INS do not fall within the
scope of § 210(e). Rather, we hold that § 210(e) applies only to
review of denials of individual SAW applications. Because re-
spondents' action does not seek review on the merits of a denial
of a particular application, the District Court's general federal-
question jurisdiction under 28 U.S.C. § 1331 to hear this action
remains unimpaired by § 210(e).

*Id.* at 494. Despite the availability of delayed, post-agency review of final determinations under

the relevant statute, and despite an explicit statutory bar against other forms of judicial review

of such final determinations (the kind of bar not found in the FTC Act, as the Tentative Ruling

notes, *id.* at 11, the Supreme Court upheld the district court's jurisdiction to challenge the

constitutionality of the "practices and policies" adopted by the agency in evaluating amnesty

13

applications. The Court emphasized the crucial distinction between challenges to the overall manner in which an agency adjudicates claims and the individualized decisions reached on the merits of any particular adjudicated claim. It held that the post-agency appellate-review provision in the relevant statute "applies only to review of denials of individual [amnesty] applications," and that because the district court complaint "[did] not seek review on the merits of a denial of a particular application, the District Court's general federal-question jurisdiction under 28 U.S.C. § 1331 to hear this action remain[ed] unimpaired by [the relevant post-agency-appellate-review statute]." *McNary*, 498 U.S. at 494. As the Court explained:

> [T]he individual respondents in this action do not seek a substantive declaration that they are entitled to [amnesty] status. Nor would the fact that they prevail on the merits of their purportedly procedural objections [in the district court] have the effect of establishing their entitlement to [amnesty] status. Rather, if allowed to prevail in this action, respondents would only be entitled to have their case reopened and their applications reconsidered in light of the newly prescribed [agency] procedures.

*Id.* at 495.

The Court also emphasized the singular focus of the applicable statutory provision authorizing post-agency appellate review, which applied only to "a determination respecting an [amnesty] application." *Id.* at 491–92. It held that "the reference to 'a determination' describes a single act rather than a group of decisions or a practice or procedure employed in making decisions," indicating Congress's intent that post-agency appellate review should apply only to "individual denials" of amnesty status and not to "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *Id.* at 492. The same logic applies here. Post-agency appellate review under the FTC Act is singularly focused on the cease-and-desist order that is issued at the conclusion of a proceeding. 15 U.S.C. §§ 45(c), (d). The statutory language does not imply any intent to force litigants who object to the constitutional legitimacy of the proceeding itself to wait for a final order. Nor

does it imply any intent to bar collateral challenges to the constitutionality of the practices and procedures used by FTC to adjudicate its proceedings.

*McNary* and a host of other never-overruled decisions point to the best way to harmonize the trilogy: when Congress creates a statute such as the FTC Act or the SEC Act, the district courts are not divested of jurisdiction to *hear challenges to the constitutionality or fairness of the tribunal. See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (2012) ("A consideration of the constitutionality of the procedures in place, which frame the system by which a veteran presents his claims to the VA, is different than a consideration of the decisions that emanate through the course of the presentation of those claims. In this respect, VCS does not ask us to review the decisions of the VA in the cases of individual veterans, but to consider, in the "generality of cases," the risk of erroneous deprivation inherent in the existing procedures compared to the probable value of the additional procedures requested by VCS.").

The Ninth Circuit, therefore, has found jurisdiction in the district courts over constitutional due process claims against an agency even when there are explicit jurisdiction-stripping provisions in a statute. "We conclude that we have jurisdiction over VCS's claim related to procedures affecting adjudication of claims at the Regional Office level. We are not precluded from exercising jurisdiction by either § 511 or the provisions conferring exclusive jurisdiction on the Veterans Court and the Federal Circuit." *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1034 (2012). This both aligns with *McNary* and puts this circuit in the same group of circuits that allow jurisdiction over the claims that strike at a tribunal's power to act at all or act fairly. S*ee Touche Ross & Co. v. SEC*, 609 F.2d 570, 574 (2d Cir. 1979) (noting retention of jurisdiction when claim went to right of SEC to promulgate rule and thus authority to conduct adjudications at all)[8]; *Finnerty v. Cowen*, 508 F.2d 979, 982–84 (2d Cir. 1974) (claims going to the constitutional processes of the tribunal require no exhaustion); (*Jewel Companies, Inc., supra* (retaining constitutional claims leaving the rest to the agency); *see also Lehigh Portland*

---

[8]      It is interesting that *Tilton v. SEC*, 824 F.3d 276 (2d. Cir. 2016), criticized aspects of *Touche Ross* in light of subsequent authority but it was not overruled and may mean the retention of jurisdiction is discretionary in cases where only delay would be served by failing to address a question of the tribunal's authority to conduct proceedings.

*Cement Company v. Federal Trade Commission,* 291 F. Supp. 628, 630 (E.D. Va. 1968) (court had jurisdiction to determine if FTC had prejudiced tribunal against cement company but finding no such prejudice).

Finally, this situation is strikingly close to *Sunkist Growers, Inc. v. Federal Trade Commission,* 464 F. Supp. 302 (C.D. Cal. 1979). Plaintiff filed a complaint, as here, for declaratory and injunctive relief because FTC had started an administrative proceeding against it on antitrust grounds. The Court, relying on Judge Friendly's opinion in *Pepsico, Inc. v. FTC,* 472 F.2d 179, 185 (2d Cir. 1972), *cert. denied,* 414 U.S. 876 (1973) found that FTC's refusal to dismiss the case was an action that it could review and that the fact that the FTC Act allowed a petition to the circuit court did not mean that the district court could not have jurisdiction over the claim prior to that. It found that it had jurisdiction under the Administrative Procedure Act because the plaintiff had exhausted the administrative procedures available, and the failure of FTC to dismiss the case was final agency action for purposes of that suit. The Court stated:

> Here, however, FTC assertion of jurisdiction is claimed by the plaintiff to have sweeping, extra-legal effects beyond the power of any court to correct or adequately remedy. These allegations are sufficient to enable the Court to take jurisdiction and consider whether it should issue injunctive and declaratory relief.

*Id.* at 307. In this case, the plaintiff claims that FTC's entire investigation, the outrageous "blank check" demand and the now certain decision to inflict a long, expensive and debilitating procedure through an unconstitutional tribunal does the same injustice that allowed jurisdiction in *Sunkist Growers.* As in that case, so too here, "the agency's denial of discretionary review, for the reasons stated, indicates that any appeal of the jurisdictional issue following the entry of a cease-and-desist order should one emerge would not be a realistically meaningful exercise." *Id.* at n.2. *Cf. Ukia Valley Medical Center v. FTC,* No. C 89 4494 AJZ, 1990 WL 25035 (N.D. Cal.) (finding that issuance of an administrative complaint is not final agency action) *aff'd* 911 F.2d 261 (9th Cir. 1990) (cited in Tentative Ruling n. 5).

## CONCLUSION

Perhaps the easier course for the Court to take would be to follow the herd of courts off the cliff in disregarding the jurisdictional significance of *Free Enterprise*. But after the decision in *Lucia*, and the Fifth Circuit's stay in *Cochran*, and the Supreme Court's recent re-affirmation of *McNary*, the wiser course is for courts like this one to re-examine the ALJ cases and recognize that district court jurisdiction exists over constitutional claims (like Axon's) that go to the legitimacy of the tribunal itself.

This Court must retain jurisdiction to discharge its Article III powers and address these threshold issues going to the constitutionality of the tribunal itself, which FTC has no authority to address and where delay would irreparably harm Axon.

Respectfully submitted, on March 27, 2020.

> /s/ Aditya Dynar
> Aditya Dynar
> (Arizona Bar No. 031583)
> **New Civil Liberties Alliance**
> 1225 19th St. NW, Suite 450
> Washington, DC 20036
> (202) 869-5210
> Adi.Dynar@NCLA.legal
> *Attorney for Amicus Curiae*

17

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 27, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and distribution to all registered participants of the CM/ECF System. Attorneys for all parties are registered users of the CM/ECF System in the District of Arizona.

/s/ Aditya Dynar
Aditya Dynar
**New Civil Liberties Alliance**
*Attorney for Amicus Curiae*
